MEMPHIS CONSOLIDATED GAS & ELECTRIC COMPANY *v.* S. T. SPEERS.

*(Jackson.* April Term, 1904.)

1. **ELECTRICITY.** Furnisher to owner of wires on his premises is not liable for a horse killed by escaping electricity, when.

  The furnisher of electricity for the illumination of a sign in front of a building is not liable for the death of a horse caused by electricity escaping from the electric wires through some defect in their construction, or from lack of perfect insulation, where the furnisher of the electricity never had any interest in or control over the wires or appliances by which the electricity was conducted to the same, and where such wires were owned and exclusively controlled by the owner of the premises.

  Case cited and approved: Insurance Co. v. Gas & Electric Co. (Col.), 63 Pac., 949.

  Case cited and disapproved: Gas Co. v. Thomas (Ky.), 75 S. W., 1129.

2. **SAME.** Same. Rejection of evidence that defendant had no control over electric wires is reversible error, when.

  Where, in an action against an electric company for the killing of plaintiff's horse, the evidence tended to show that the plaintiff's horse was killed through some defect in construction of electric wires, or from lack of perfect insulation thereof, the exclusion or rejection of testimony offered by the defendant electric company to show that it never had anything to do with the wiring, but that the same was done by the owner of the premises and was under his exclusive control, that it simply furnished the electricity for the owner of the premises and received payment therefor, is reversible error. (*Post, p.* 85.)

3. **SAME.** Same. Same. Charge that furnisher of electricity liable for horse killed thereby is reversible error, when.
   The court's charge to the jury that if they find that the plaintiff's horse was killed by electricity furnished to the owner of the premises by the defendant, then they should find for the plaintiff, is reversible error. *(Post, p. 85.)*

---

**FROM SHELBY.**

---

Appeal from the Circuit Court of Shelby County.—J. S. GALLOWAY, Judge.

WRIGHT, PETERS & WRIGHT, for Gas & Electric Company.

CARUTHERS EWING, for Speers.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The evidence in this case tends very strongly to show that the horse of defendant in error was killed by an electric shock, while standing hitched to a post in front of the business house of one Roberts in Memphis. This post supported an illuminated sign, used by Roberts to advertise his business. The sign was lighted by electricity, which passed to it through wires which were incased in a lead pipe. These wires were an extension of those in Roberts' house.

In hitching, the defendant in error threw a small steel chain around the post and fastened its two ends to the bit in the horse's mouth.  This chain came in contact with a metal clamp, the purpose of which ·was to support and fasten the lead pipe to this post.

The testimony tended also to show that through some defect in construction, or from a lack of perfect insulation, of these wires, electricity escaped from them, and was communicated to the horse, through the chain which held him, in sufficient quantity to cause his death. The contention of the plaintiff in error was that, even if this were true, yet it was in no way responsible.   To make good this contention, it offered testimony to show that all the wiring about the premises of Roberts was done under his order; that the wires were his property' and under his exclusive control; that under an ordinance of the city of Memphis it made a connection with. these wires only after an inspection of them by the electrician and the board of underwriters of the city of Memphis, and a certificate from both that they were in good condition to receive the current; and that the sole relation which it had to these wires was to furnish the electricity and receive payment for it. This testimony was excluded by the trial judge, and when he came to charge the jury he said to them, in substance, that if they found that the horse was killed by electricity furnished to Roberts by plaintiff in error over a defective wire, then they should find for plaintiff.

In both respects there was error.   If it be true that

the facts were as this rejected testimony indicated, we cannot conceive of any rule of law, which holds the gas and electric company liable for this loss.   It is true that electricity is a subtle, and, unless controlled, a dangerous, agent; yet we do not see how this fact fixes responsibility on this company, when it simply furnished the electric current to the wires of Roberts, over which it had no control, and with regard to which there was on its part no duty of inspection, and when the record does not impute to it any knowledge of the defect producing the loss complained of.

Gas, used for illuminating purposes, uncontrolled, is also a dangerous agency; yet it would hardly be insisted that a company which made and furnished it to the pipes of a customer on his own premises would be liable for the asphyxiation of this customer, or of a stranger, his guest, caused by a leakage from these pipes. Or, changing the illustration, should there be so violent an explosion of the gas accumulated from the leak, that the house of his neighbor, who has no interest in or control over them, was injured; could it be said the company furnishing the gas was liable to either for his loss? We take it that the law reports may be searched in vain for a case where a gas company had been held liable under such conditions, or for a sound rule of law which would sanction placing such liability on the company.

We understand that liability for an injury occasioned through such a defect depends upon the interest in or control over the appliance in which the defect exists,

and, if there is neither interest nor control, there would be none. In the illustrations given, while it is the gas which inflicts the injury, yet it would have been harm-less, save for the defect in the pipes, which were the property of and exclusively under the dominion of the owner of the house in which they were located; and this must be equally true as to an electric company furnishing its product under like circumstances. We can perceive no reason for a distinction between the two cases, and no principle upon which either could be held liable for injuries sustained by an escape of the destructive agency of its creation, without fault or negligence on its part.

The circuit judge, in excluding the testimony as to the ownership and control of the defective wires by another than the plaintiff in error, as well as in his charge, was controlled by the case of *Maysville Gas Co.* v. *Thomas' Adm'r* (Ky.), 75 S. W., 1129. While the opinions of that court are entitled to the highest respect yet we are not able to coincide with its reasoning in that case. The sounder view, we think, is that of the court of appeals of Colorado, as expressed in *National Fire Ins. Co.* v. *Denver Gas & Electric Co.*, 63 Pac., 949.

In each of these cases, the company furnishing the electric current had no interest in or dominion over the wires, the defect in which permitted the current to escape, so as to inflict the injury complained of. In the Kentucky case the court rested its conclusion upon the dangerous nature of the agency supplied. "Consider-

ing," said the court, "the dangerous character of the force produced by the gas company, there was a duty imposed on each (that is, the furnisher and receiver) to see that the wires into which it was sent were properly insulated. The danger was exactly the same, whether the wire was owned by one or both of these corporations."

Pressed to its legitimate conclusion, we think this argument would make an electric or a gas company an insurer against defects in appliances over which they had no control, and, to avoid liability, would impose upon them the duty of continued inspection of the wires and pipes of every customer supplied with their products. This would be a burden which no such company could bear and live; and it also would be a source of annoyance to its customers, which they would not long submit to.

We prefer to place this court in line with that of Colorado, which holds that there is no liability when there is no control over the wires and no knowledge of the defect which was the occasion of the injury.

Judgment reversed, and cause remanded.