DELANEY *v.* TOWN OF ETOWAH *et. al.*

(Two cases).

(*Knoxville,* September Term, 1944.)

Opinion filed May 5, 1945.

JENNINGS, O'NEIL & JARVIS, of Knoxville, and CANDLER & HITCH, of Athens, for plaintiffs in error (plaintiffs below).

HODGES & DOUGHTY, of Knoxville, R. A. DAVIS, of Athens, and R. R. WEBB, of Etowah, for defendant in error (defendant below).

MR. JUSTICE PREWITT delivered the opinion of the Court.

The jury's verdict was in favor of the defendant Town of Etowah. Following the overruling of the motion for a new trial and judgment thereon, the Court of Appeals affirmed the judgment of the trial court.

The suit was for damages for a shock—very severe in its nature—occasioned by plaintiff's hand coming in contact with a charged wire while she was adjusting her radio at her home in Etowah on July 13, 1943.

The Court of Appeals found that there was material evidence to support the verdict of the jury, which was approved by the trial judge. We also find that the record supports this conclusion and that the jury did not act unreasonably or arbitrarily. *Jackson v. B. Lowenstein & Bros., Inc.*, 175 Tenn. 535, 136 S. W. (2d) 495.

It appears that Mr. and Mrs. Delaney rented the residence in March, 1942. At that time it was served by a 110-volt current suitable for lights and a radio. The landlord agreed to wire the house for an electric stove which required 220 volts. This was done by the use of a single-phase, three-wire line. The two outside wires carried 110 volts each. The center wire was neutral. These wires were carried into the meter box and fused. There were two circuits, one of 220 volts was obtained by combining the two 110-volt wires, which was fed into the stove; the other, of 110 volts, was obtained by the neutral and one of the 110-volt wires, and was fed into the house for lighting and a radio. The proof shows that this was done by the defendant in a skilled and proper manner. It functioned satisfactorily for sixteen months. The proof further shows that the primary and secondary lines were properly constructed and protected by automatic switches and fuses. The proof also shows that there was no way by which in excess of 110 volts could enter the lighting circuit entering the radio.

There were two outlets or plugs, one being at the front part of the living room and the other at the rear, about 18 feet apart. On exhibit No. 1 to the testimony of Mrs. Delaney the plug at the front is designated as "A" and the one at the rear as "B." Plaintiff's radio was attached to "A" and had a ground wire leading out of the window to a ground rod of iron driven into the earth. The radio performed satisfactorily in this position. When the Delaneys moved into the house "B" was dead, but in a short time it, as well as a defect in the bathroom, was corrected. The proof shows that this work was done by the defendant in a proper manner. To the outlet "B" there was plugged in a lamp which, though not used often, gave satisfaction.

On the day of the accident Mrs. Delaney changed the living room furniture and moved the radio across the room to "B." She first disconnected the ground wire from the radio, put it out the window and brought it around the house and then into the house through a window near outlet "B" and attached it to the radio. The antenna was near by. After making these connections she turned the radio on but it "popped and cracked." Mrs. Delaney thought the ground wire had static in it, so without cutting off the radio she went outside and took hold of this ground wire with her hand. The earth was damp. The wire was uninsulated and she received a near fatal shock and fourth-degree burns in her hand and third-degree burns on her face and neck before the wire could be cut. This ground wire had been safely handled by her while the radio was connected with outlet "A." The defendant had nothing to do with the installation of the radio or ground wire.

The testimony shows that 110 volts were entering the radio and that 220 volts were coming out of it. The testimony further shows that there was nothing in the wiring from the switch board to the radio that would cause this; that the only possible cause of stepping up the voltage was the radio. A radio expert testified that under certain conditions this type of radio would increase a 110 volt to 205 or 215 volts. There is also evidence that if 220 volts went in the circuit supplying lights and a radio that they would be immediately burned or shorted out.

The general rule is that where the company generating electric current does not own, control, or maintain the wires or appliances over which its current is transmitted to a consumer it is not liable for injuries to the person or property of the consumer who owns, con-

trols, or maintains such wires or appliances. *Oesterreich* v. *Claas,* 237 Wis. 343, 295 N. W. 766, 134 A. L. R. 499, annotation 508; 18 Am. Jur. 498-500 (Electricity, Sec. 102).

In *Gas & Electric Co.* v. *Speers,* 113 Tenn. 83, 81 S. W. 595, it was held that the power company would not be liable to a third person for injuries sustained through defects in wires or appliances owned or operated by the owner of the premises.

It results that the petition for *certiorari* will be denied.