# LAWSON v. CITY OF CHATTANOOGA.—263 S. W. (2d) 538.

Eastern Section. May 6, 1953.

Petition for Certiorari denied by Supreme Court, October 9, 1953.

Noone, Tanner & Noone, of Chattanooga, for plaintiff in error.

J. W. Anderson, C. G. Milligan and Will F. Chamlee, all of Chattanooga, for defendant in error.

HOWARD, J. This action was filed by the plaintiff, Willie Mae Lawson, a widow, against the City of Chattanooga to recover damages for the death of her husband, Lou David Lawson, a plumber, age 25, who was accidentally electrocuted on February 5, 1951, by coming in con-

tact with an electrically charged gas pipe while repairing the plumbing under the bathroom of the house owned by Robert R. Johnson, at 509 Lansing Street, in the City of Chattanooga.

Plaintiff's declaration is in six counts, five of them alleging that the defendant City, through its Electric Power Board, was guilty of acts of common law negligence, and the sixth count charging a violation of the provisions of the Building Code of the City of Chattanooga requiring permits to be obtained from the Office of the City Electrician before installing electrical equipment, and also requiring inspection and approval by the City Electrician of all installations before the current is turned on.

Plaintiff's declaration alleges in substance (1) that the defendant negligently permitted the gas pipe to become electrically charged; (2) that the defendant negligently failed to properly inspect the wiring, fixtures, etc., and permitted high voltage wires to come in contact with the low voltage wires; (3) that the defendant, through some manner unknown to plaintiff, but known or should have been known to defendant, negligently permitted the wires, ground wires, etc., under the house to become electrically charged; (4) that the defendant had full and exclusive control of all fixtures, wiring, etc., in the house; (5) that the defendant negligently permitted an excessive amount of the current to be distributed through the house, and by reason of a defect in the wiring, or fixtures, a large amount of current was diverted into the metal pipe; (6) that the defendant made changes in the wiring of the house when an electric range was installed in March, 1948, following which the defendant's inspector negligently failed to properly inspect all the wiring before the current was turned on; and (7) that if there had been proper

inspection by the defendant, the existing defect could have been discovered and the decedent's death avoided.

By special pleas the defendant not only denied the charges of negligence, but interposed the following additional defenses:

(1) That the defendant had no notice of any defect in the wiring or fixtures, which were under the control of the occupant of the property, and had no way of knowing that the gas pipe was charged on the date of the decedent's death; that at no time did the current in the Johnson home, except on the electric range, exceed 110 volts.

(2) That the electrical fixtures in the Johnson home were not under the defendant's control, as alleged, but were under the control of the owner of the property.

(3) That when the range installations were made in March, 1948, the work was done by independent contractors in compliance with standard safety regulations, and said installations had no connection with the decedent's death.

(4) That on March 18, 1948, the range installations were inspected and approved by the defendant's electrician, as required by the Building Code, who at the time was performing a governmental function.

(5) That the defendant merely transmitted electric current through the wires and fixtures of the house but had no control over them.

At the conclusion of the plaintiff's evidence, the trial court, upon defendant's motion, directed a verdict for the defendant on all five and a portion of the sixth count of the declaration on the ground that the doctrine of res ipsa loquitur was inapplicable to the facts. On the remaining portion of the sixth count, the court submitted to the jury the question of whether or not the defendant, by proper inspection of the range installation, could have discovered

the defect in the wiring that subsequently caused the decedent's death. On this question, the jury returned a verdict for the defendant, which the court approved, and upon the overruling of the plaintiff's motion for a new trial this appeal in error resulted.

The record discloses that the house under which the accident occurred was old and was originally lighted with gas; that several years previous to 1948, the year the Johnsons acquired ownership of the property, the lighting system was changed from gas to electricity, but the old gas pipes were never removed; that at the time the house was wired for electricity one of the electrical fixtures, a metal circular chandelier which hung by a chain, was fastened to the old gas outlet in the ceiling of one of the downstairs bedrooms; that subsequently, but the date was unknown, the insulation on one of the four metal switches attached to the chandelier became worn and defective, in which condition the current passed into the chandelier, up the chain into the gas outlet, and into the unused pipe which extended to a point underneath the house where it had been disconnected about a foot above the ground.

The record further discloses that previous tenants occupying the house had used gas for cooking purposes and that the Johnsons wanted to cook with electricity, but were unable to do so until the house could be properly wired for a range; that in March 1948, Johnson went to the office of the Electric Power Board of the City of Chattanooga where he made application for the necessary wiring, the details of which the Board agreed to handle for him, and his application was thereafter turned over to the Lindsay & Moreland Electric Company, reputable contractors. The Board also agreed to pay a part of the expenses incident to the wiring, this being their policy where users changed from gas to electricity. To make

said installations, the Building Code of the City of Chattanooga required that a permit be first obtained from the office of the City Electrician, which in the instant case was done by the contracting firm, the permit obtained authorizing only the installation of a range and reciting that the meter center was "already in". However, the old meter which was located in the upstairs hallway was removed and a new meter and switchbox were installed on the back porch of the house. When the job was completed one of the City's electricians inspected and approved the new installations, but made no examination of the old wiring, fixtures, etc., already in the house. This occurred on March 18, 1948, and it was not discovered that the gas pipe was electrically charged until several weeks after the decedent's death when the plaintiff employed an electrician, W. D. Ashley, to make an inspection of the fixtures and wiring in the house. There were three separate circuits in the house, one upstairs, one downstairs, and one for the range. By testing each of the circuits with a voltmeter, the electrician discovered that the pipe was charged by reason of the current escaping through the defective switch, which was on the downstairs circuit. By replacing the defective switch, the existing dangerous condition was eliminated.

On the date of the accident, the decedent had gone to the Johnson home for the purpose of repairing a burst water pipe under the bathroom floor, which had been leaking for several days. The floor was about two and one-half feet above the ground, and to get to the source of trouble it was necessary for him to enter through a small opening in the foundation of the house and crawl for a distance of several feet. After making the repairs, he was in the act of returning to the point of entrance when the left side of his neck, just below the lobe of the ear,

came in contact with the electrically charged pipe, severely burning his neck in two places and killing him instantly.

It is conceded that the range and meter installations were on a separate circuit from that of the defective switch; that they were properly made, and that they had no connection with decedent's death.

By the first five assignments of error the plaintiff complains that the trial court erred in directing a verdict for the defendant on the first five counts of the declaration, because, it is insisted, there was material evidence adduced to support said counts (1) on common law negligence, and (2) under the doctrine of res ipsa loquitur. In support of these assignments, it is argued that at the time the installations were made the defendant was under a common law duty to inspect all the fixtures, wiring, etc., in the house, and was guilty of negligence in not so doing; that according to the medical evidence the neck burns received by the decedent were made by current greatly in excess of 110 volts, which, by reason of defendant's negligence, was permitted to enter said fixtures and wiring.

The evidence adduced by plaintiff showed that the wiring for the upstairs and downstairs circuits was for lights of 110 volts, and that for several months prior to the accident a small radio had been plugged into the defective socket. The test made by Ashley, the electrician, showed that the pipe was charged with from 108 to 110 volts, and he stated that if the current had ever exceeded 110 volts the radio would have burned out. There was no proof that either ever occurred. Dr. Adams, who examined the decedent's burns, testified that they were severe and appeared to have been caused by a very high voltage, but he stated, as did Ashley and

John Milburn, an electrical engineer, that 110 volts were sufficient under certain conditions to electrocute a person. Thus, according to the plaintiff's evidence the current in the pipe never exceeded 110 volts, and a jury verdict favorable to the plaintiff on this issue would have been the result of conjecture and speculation, which is, under decisions too numerous to mention, not permissible.

Plaintiff's evidence further showed that the burst water pipe had been leaking for several days, that the ground in the immediate area was wet, and that the decedent's body appeared to be "damp". From these facts, and from the additional fact that the decedent was unable to stand while making the repairs, it would not be unreasonable to conclude that his clothing and shoes were wet when he came in contact with the electrically charged pipe. Though witnesses described the ground where the accident occurred as dry, being several feet from the burst water pipe, the aforedescribed conditions probably made the decedent's body more conducive as a conductor of current.

Plaintiff introduced no evidence that the defendant had any knowledge of the defective switch, and as we understand the law the defendant was under no common law duty, as insisted, to inspect the fixtures and wiring of the house before connecting its service lines. Nor would the doctrine of res ipsa loquitur apply, since the proof showed that the fixtures, wiring, etc., in the house were not under the defendant's exclusive management and control. There is no dispute as to the applicable law.

Where a company merely transmits its electric current from its line to the consumer's wires, which it did not install and does not control, it has no duty to inspect such wires and is not liable for injury caused by defects in them. Gas & Electric Co. v. Speers, 113 Tenn. 83, 81

S. W. 595; Delaney v. Town of Etowah, 182 Tenn. 386, 187 S. W. (2d) 531; Null v. Electric Power Board of City of Nashville, 30 Tenn. App. 696, 210 S. W. (2d) 492; Dabbs v. Tennessee Valley Authority, 194 Tenn. 185, 250 S. W. (2d) 67.

But where the company knows of such a defect, its duty is to stop and not to send its deadly current into the defective wiring of the consumer, and it is liable for injuries to person or property caused by breach of this duty. Gas & Electric Co. v. Speers, supra; Null v. Electric Power Board of City of Nashville, supra; Dabbs v. Tennessee Valley Authority, supra.

In order to render the res ipsa loquitur doctrine applicable, the nature and circumstances of the accident must be of such character that there could be no reasonable inference but that the injury complained of was due to the defendant's negligence or to the negligence of others for whose acts defendant is legally responsible. In addition to the above, it must be shown, of course, that the instrumentality was under the exclusive control of the defendant. Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. (2d) 721, 171 A. L. R. 1200; Susman v. Mid-South Fair, Inc., 180 Tenn. 471, 176 S. W. (2d) 804; 18 Am. Jur., 110, pp. 507, 508; 29 C. J. S., Electricity, Sec. 66, pp. 624, 625, 626, 627.

By assignments six and seven, the plaintiff complains that the trial court erred in refusing to submit to the jury a portion of the sixth count of the declaration under the doctrine of res ipsa loqitur, and in directing a verdict thereon for the defendant. That portion of the declaration on which the Court directed a verdict was based on the following provisions of the defendant's Building Code.

"It shall be the duty of the City Electrician to inspect all interior wiring to see that the provisions of this ordinance are complied with."

"The Electrician of the Fire Department shall be known as the City Electrician for the City of Chattanooga, and is hereby authorized, empowered and directed to regulate and determine the placing of electric light and power wires in and on buildings in said City, so as to prevent fires, accident or injury to persons or property, * * *."

"No alteration or change shall be made in the wiring of any building, nor shall any building be wired for the placing of electric lights, motors or heating devices, without first securing from the said City Electrician, or competent person delegated by the Chief of the Fire Department, a permit therefor, nor shall any change be made in the electric plant after inspection without notifying the said City Electrician or person delegated by the Chief of the Fire Department, and securing a permit therefor. Upon completion of the wiring of any building, it shall be the duty of the company, firm or individual doing the same to notify the said City Electrician or competent person delegated by the Chief of the Fire Department, who shall at once inspect the same, and if approved by him, shall issue a certificate of satisfactory inspection, which shall contain the date of such inspection, and outline of the result of such examination, but no such certificate shall be issued unless the electric light, power or heating installation, and all apparatus, wires, etc., connected with it, shall be in strict conformity with the rules and regulations hereinafter set forth; nor shall current be

turned on such installation until said certificate be issued."

"The said City Electrician, or other competent person delegated by the Chief of the Fire Department, shall have the right at any time to enter any building, manhole or subway, in the discharge of his or their official duty, or for the purpose of making any tests of the electrical apparatus or appliances therein contained. *And for that purpose he or they shall be given prompt access to all buildings, public and private, and to all manholes and subways, on application to the company or individual owner or (person) in charge or control of the same.*" (Emphasis supplied).

In support of these assignments, it is argued that the defendant, under the foregoing provisions, had complete control over all the buildings and houses within its corporate limits, and that its electrician had a right to inspect the fixtures, wiring, etc., therein at any and all times; that defendant could prohibit a change in the existing wiring in any building, and that changes could not be made by the owner or occupant without (1) obtaining a permit, and (2) inspection and approval by its electrician.

After carefully considering these assignments, we have concluded, as did the trial court, that the doctrine of res ipsa loquitur was inapplicable under the sixth count of the declaration, for the following reasons:

The foregoing provisions were enacted by the City of Chattanooga under its police powers for the protection, safety and welfare of its citizens, and they contain no express provision giving the defendant exclusive control over the electrical installations in privately owned buildings; nor can such authority be reasonably implied therefrom. Though, as indicated by the emphasized provi-

sions, the defendant's inspector "shall be given access to all buildings" etc., access thereto can be obtained only "on application to the company or individual owner or (person) in charge or control of the same." Thus inspection is made conditional on application and presumably by permission. Such holding, as insisted, would not only put a strained construction on said provisions, but would impose upon the defendant the duty of continued inspection of all installations of users of current, and would virtually make the defendant an insurer against all injury due to defective wiring in buildings. This would not only require the employment of a horde of inspectors at a great financial burden, but would also be a source of annoyance which users would not long submit to.

Viewing the evidence in its most favorable aspect to the plaintiff, as required under our decisions, we think for reasons indicated that the evidence was insufficient to make a case for the jury under the first five and a part of the sixth counts of the declaration, and that the trial court properly directed a verdict on these counts. The law is well settled that where there is no evidence to support a jury verdict, it is the duty of the trial court to direct a verdict for the defendant. Norman v. Southern Ry. Co., 119 Tenn. 401, 104 S. W. 1088; Young v. Dozier, 4 Tenn. App. 148; Hutchens v. Nat. Fireworks Distributing Co., 7 Tenn. App. 575.

By the remaining assignments, it is insisted on behalf of the plaintiff that the trial court erred in charging the jury under a part of the sixth count of the declaration that the defendant's inspector was not required under the foregoing provisions of the Building Code to inspect other fixtures, wiring, etc., in the house on March 18, 1948, when the range installations were inspected and approved; that the Court should have charged the jury

that it was the duty of the inspector to go through the house at that time and inspect all the installations. That portion of the charge complained of reads as follows:

"Ladies and gentlemen, electricity being a dangerous substance the defendant is bound to anticipate that others could be injured, and their inspection must be made with this in mind. I charge you as a matter of law that ordinances read to you do not contemplate or require an inspection of the wiring, fixtures, outlets, etc., of the entire house, but only that portion as repaired or installed on March 18, 1948 by the Lindsay-Moreland Electric Company, however, if the City of Chattanooga knew by inspection of that portion of the electrical system installed by the Lindsay-Moreland Electric Company, or could have known of the defective condition of the light socket and its connection with the gas pipe, and failed to remedy such condition, and that Lawson lost his life as the proximate result of such defective condition, then your verdict must be for the plaintiff."

After a careful consideration of the provisions in question, we think that the Court placed the proper construction upon them.

As previously pointed out, the old installations used for lighting the house consisted of two circuits which apparently had been previously inspected and approved as provided by the provisions in question. The installations for the range, according to the undisputed evidence, had no connection whatsoever with either of the old circuits and no insistence was made that the current from the range circuit ever entered the circuit that charged the pipe. There was no reason for the defendant's inspector to suspect the existence of a defective switch in the chandelier or that the pipe was charged.

W. L. Williams, the defendant's electrician, testified that from 1929 to 1942 he was assistant electrician, and that for the installation of a range only one inspection is necessary; that in the wiring of an entire building, not less than two inspections are required, one before the wiring or any part of it is covered, and the second, after the building is completed, the fixtures hung, switches, receptacles and meter center installed.

Placing a reasonable construction on the aforesaid provisions, we are of the opinion that where the electrical installations in a building have been previously inspected and approved, as was apparently done in the instant case, that the defendant's inspector, in the event of a subsequent installation, was not required to reinspect the old installations in the building, but only those incident to the new installation. Here, the permit was for a range, and we think that the defendant's inspector was only required to inspect the installations incident thereto, and that there was no error in the charge.

Attorneys for the respective parties have ably presented this case, and it is not without considerable effort that we have concluded that the assignments are without merit. Therefore, all assignments are overruled and the judgment affirmed at plaintiff's costs.

McAmis and Hale, JJ., concur.