NORINE U. TAYLOR v. ROBERT LINNIE PARKS.

(Filed 22 March, 1961.)

**1. Automobiles § 54f—**

Admission by defendant in his verified answer that he was, at the
time of the collision, the owner of one of the vehicles involved in the
accident, entitles plaintiff to the benefit of G.S. 20-71.1(a) when the
action is brought within one year of the accident, and constitutes *prima
facie* evidence that at the time of the collision the vehicle was being
operated with the authority, consent, and knowledge of defendant.

**2. Same—**

Where plaintiff neither alleges or offers proof as to the registration
of a vehicle involved in the collision in suit, G.S. 20-71.1(b) is not ap-
plicable.

**3. Same— Plaintiff's evidence held to rebut presumption raised by G.S. 20-71.1(a), and nonsuit was proper.**

Where defendant admits that at the time of the accident he was the owner of one of the vehicles involved in the collision, but plaintiff elicits testimony from her own witnesses of declarations made by defendant to the effect that at the time in question the driver had taken defendant's automobile without defendant's authorization, knowledge, or consent, and was not at the time defendant's agent or employee or acting in the course and scope of any employment by defendant, plaintiff's own evidence rebuts the presumption created by G.S. 20-71.1(a), and, such evidence not being contradicted by any other evidence of either plaintiff or defendant, nonsuit on the issue of agency is proper.

APPEAL by plaintiff from *Stevens, J.,* September Term 1960 of HERT-FORD.

Civil action to recover damages for personal injuries sustained in a collision between two automobiles.

About 11:30 o'clock a.m. on 27 June 1959 plaintiff was riding in a 1956 Ford automobile owned by her husband, and operated by their daughter, Brenda Taylor, in a westerly direction along U.S. Highway No. 158 between the towns of Winton and Murfreesboro, about one-half mile from Murfreesboro. She was holding a small son in her arms. At the same time a 1946 Plymouth automobile was being driven in an easterly direction along the same highway by one Arnold Charlie Pope, and was meeting them.

Plaintiff alleges in paragraph four of her complaint: "That at all times hereinafter alleged, the defendant was the owner of a 1946 Plymouth Coupe, which was being operated by Arnold Charlie Pope with his consent or as his agent, servant or employee, and within the scope and course as said agent, servant or employee of this defendant." Defendant's answer thereto is as follows: "Answering paragraph 4, defendant admits that he was the owner of the 1946 Plymouth Coupe, but the remaining allegations of paragraph 4 are denied."

Plaintiff offered evidence as follows:

Brenda Taylor testified in respect to the collision: "As I came down the hill there, I saw this car coming around the side of the curve; off on the shoulder, and it was driving as fast as it could go; it was an old car. Then I saw the car swerving back and forth off the shoulder, and then it came onto the road, on his side of the road, and it was going so fast that the wheels were wobbling, and then the next thing I knew, it came right on into us and hit us. . . . I do not remember anything that happened after that; the only thing I remember is lying on the other side of the road, and remember being

taken to the hospital in Ahoskie. My mother was hurt in the accident. My little brother was killed in the accident." She saw no other car there. The road is a two-lane paved highway, and is a main thoroughfare.

W. T. Liverman, a police officer of the town of Murfreesboro, went to the scene of the collision between 11:30 o'clock a.m. and 12:00 o'clock noon. He saw there a 1946 or 1947 Plymouth automobile, with its left door open, and the feet and hips of Arnold Charlie Pope were lying on the left side of the front seat of the automobile, and his head and shoulders were lying on the dirt. No one else was in the Plymouth automobile. He helped place plaintiff, her daughter and the little boy in an ambulance, and then Pope was loaded into his car and he carried him to the hospital. In Liverman's opinion, Pope had been drinking and was unconscious when he arrived.

Thad Jernigan, a state highway patrolman and a witness for plaintiff, arrived at the scene about 12:05 o'clock p.m. He saw there a 1956 Ford automobile and a 1946 Plymouth automobile, which had collided. Both automobiles were damaged extensively in front. Later he talked to Arnold Charlie Pope, who had no driver's license. He then testified on direct examination by plaintiff's counsel: "Yes, I talked to the defendant Robert Linnie Parks; I had some conversation with Parks about this accident. The first time I saw Parks, I believe was in the hospital in Ahoskie. He was there to get his wife out of the hospital, who was at that time in the hospital. I asked Parks about the automobile, and I believe he supplied me with the registration for the automobile. Parks said at that time he had been to a children's party sometime during the morning, and that he and Pope had gotten together and that Pope had taken his car, and also that he had a considerable sum of money in the automobile, in the neighborhood of $100.00, in the glove compartment, and that he had not seen it since the accident. At that time, Parks was drinking and had the odor of alcohol on his breath. As a result of his claim about the money, the automobile was rechecked, the money was not found and never was found. Later, Parks said that he and Pope had gone to a Ruth Early's home about four o'clock in the morning, or that he got up with Pope at Ruth Early's about 3:30 or 4:00 o'clock in the morning, and that they left there after a while and went to Ahoskie, and that he got some gas in Ahoskie and went to Union, and that he stayed in Union about two and a half hours. He said he left Pope at Byrdland. That is a joint that was situated in Union at that time. He said he left Pope there and went to see a woman. That he came back and got Pope and came to Winton to work on his car. He said

he was talking to Lessie Archer at the time the car was taken; that Virginia Reynolds told him his car was gone. He said he had been having trouble with the switch and that they had straight-wired the switch, and had taken one of the wires off and laid it down on the seat, and that Pope must have put it back to get the car started. I don't recall whether Parks did or did not tell me about drinking any whiskey that morning, but when I saw Parks, he had been drinking."

Jernigan testified on cross-examination: "I received a report that this particular automobile had been stolen. After I received that report, I received another report that there had been an accident, and I went to investigate the accident, and then realized it was the same vehicle . . . . I saw Parks later. He told me that this man had taken his car, and that the first time he knew his car had been taken was when Virginia Reynolds told him this man had gotten his car and gone. He told me he had had trouble with the switch, and had wired it straight. . . . When I found the car, in connection with what he told me about the car being straight-wired, I found that to be true. Yes, the wires had been put together so the car would start. There were no keys in the car. . . . He was saying he did not give him the keys or permission to put the wires together to take the car."

Harry Parker operates an automobile repair business in the town of Winton. Between 9:00 and 10:00 o'clock a.m. on 27 June 1959 a 1946 Plymouth automobile crossed Weaver Street, jumped a ditch, and hit a truck on his parking lot. A few minutes after this defendant came up, and said something to the effect that his car had been stolen. He did not get his exact words. Parker reported it to Thomas Pope, a police officer of the town of Winton.

Thomas Pope went to Parker's to investigate the collision. While he was talking to several people there, the defendant came up. The first thing he said to Pope was, "that boy has torn my car to pieces, I did not tell him to take it." Pope then testified on direct examination by plaintiff's counsel as follows: "I inquired whether he left the keys in the car or not. He said that he did not leave the keys in the car; that he had the keys in his pocket; that he must have wired it up straight. I inquired as to how it happened he took the car, and he said he and Arnold Pope were at a children's party that morning; that they had been together all morning, and that he had put Pope in the car in front of Virginia Reynolds' house and told him to sit in the car, but that Pope took the car without any permission but that he did not think that he intended to steal the car; that he thought he was intending to bring it back; that I could go down and talk to

Virginia Reynolds and she would tell me all about it. I took him in my car and went down to Virginia Reynolds' house. She said she did not know anything at all about it; that Parks and Pope were together but she did not know whether the car was stolen or not and knew nothing about it. I asked Parks if he wanted to report the car stolen, and he said he thought Pope would bring the car back and she also told me that Pope was intoxicated. At that time, when I was talking to Parks, he was about half-drunk and said he thought probably Pope would bring the car back. I told Parks if the car had been stolen, we would go to the Police Station and report it as stolen. I took him in my car and went down to the Police Station in Winton and I called Ahoskie Radio Station, which I had put on the air about the car being stolen. That was approximately 11:00 o'clock when I made the investigation, and about 11:15 when I reported the car as stolen." Pope testified on cross-examination: "He (defendant) told me then the car had been stolen, that he had his keys in his pocket, that his car must have been straight-wired, and that he knew it was Arnold Pope who was driving the car. . . . That was somewhere between 11:00 and 11:15 o'clock."

Robert Bruce Brady between 10:10 o'clock a.m. and 10:30 o'clock a.m. on 27 June 1959 saw Arnold Charlie Pope driving a 1946 Plymouth automobile on the Cofield Road. He was weaving back and forth across the road, and slumped down in the automobile. Pope turned into the Murfreesboro Road.

Reuben Stephens testified in substance: A little after 11:30 o'clock a.m. on 27 June 1959 Arnold Charlie Pope driving a Plymouth automobile hit his automobile parked at a store in or near Murfreesboro. Stephens drove up to Highway No. 158, and stopped. As he was stopping Pope passed him driving a Plymouth automobile along Highway No. 158 toward Winton.

From a judgment of involuntary nonsuit entered at the close of plaintiff's evidence, on motion of defendant, plaintiff appeals.

*Jones, Jones & Jones and Gay, Midyette & Turner for plaintiff, appellant.*

*Ruark, Young, Moore & Henderson by: J. C. Moore and J. Allen Adams, and Cherry & Cherry by: J. Carlton Cherry for defendant, appellee.*

PARKER, J. Plaintiff instituted her action on 27 January 1960, within one year after her cause of action accrued. Consequently, she is allowed the benefit of G.S. 20-71.1.

The complaint and answer were verified. Defendant admits in his

answer ownership of the 1946 Plymouth automobile at the time of the collision of this automobile and the Ford automobile in which plaintiff was riding as a passenger. This is the judicial admission of a fact in the final pleadings defining the issues and on which the case went on trial (Stansbury, N. C. Evidence, p. 380; 31 C.J.S., Evidence, § 301), and by virtue of the provisions of G.S. 20-71.1 (a) constitutes *prima facie* evidence that the 1946 Plymouth automobile was being operated and used by Arnold Charlie Pope at the time of the collision here with the authority, consent, and knowledge of the owner, Robert Linnie Parks, in the very transaction out of which plaintiff's injury arose.

This Court said in *Hartley v. Smith*, 239 N.C. 170, 79 S.E. 2d 767: "The statute (G.S. 20-71.1) was designed to create a rule of evidence. Its purpose is to establish a ready means of proving agency in any case where it is charged that the negligence of a nonowner operator causes damage to the property or injury to the person of another. *Travis v. Duckworth*, 237 N.C. 471, 75 S.E. 2d 309. It does not have, and was not intended to have, any other or further force or effect." This Court in *Roberts v. Hill*, 240 N.C. 373, 82 S.E. 2d 373, after quoting the above, says: "This language appearing in the *Hartley* case was used advisedly. We adhere to what is there said."

Plaintiff's cause of action, as set forth in her complaint, is bottomed on the theory "the defendant was the owner of a 1946 Plymouth coupe, which was being operated by Arnold Charlie Pope with his consent or as his agent, servant or employee, and within the scope and course as said agent, servant or employee of this defendant."

However, plaintiff not content with the judicial admission in defendant's answer that he was the owner of the 1946 Plymouth automobile at the time of the collision here, which constitutes *"prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose," by virtue of the provisions of G.S. 20-71.1(a), went on and adduced on direct examination from her witnesses state highway patrolman Thad Jernigan and police officer Thomas Pope clear, convincing and uncontradicted statements made to them by defendant to the effect that Arnold Charlie Pope on 27 June 1959 had taken his Plymouth automobile and was driving it at the time of the collision here without his authority, consent, and knowledge, that he was at the time neither his agent, servant nor employee, and that he was not driving the Plymouth automobile at the time for his benefit, and not driving it at the time within the course and scope of any employment by him.

Not a single fact or circumstance appearing of record contradicts defendant's declarations offered in evidence by plaintiff by direct examination of her two above mentioned witnesses, and offered by her as worthy of belief.

If plaintiff had not brought out from her witnesses on their direct examination the above declarations of defendant, and if plaintiff had rested her case, and defendant had testified to the same facts as clearly, convincingly, and without contradiction, as such declarations of his appear in plaintiff's case, it seems that under the authority of *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309, defendant would have been entitled to have the trial court give a peremptory instruction to the effect that it should answer the issue of agency or of driving the automobile by Pope with the authority, consent, and knowledge of defendant in the negative, if it "found the facts to be as the evidence tended to show." To the same effect, *Jyachosky v. Wensil,* 240 N.C. 217, 81 S.E. 2d 644; *Davis v. Lawrence,* 242 N.C. 496, 87 S.E. 2d 915; *Skinner v. Jernigan,* 250 N.C. 657, 110 S.E. 2d 301; *Whiteside v. McCarson,* 250 N.C. 673, 110 S.E. 2d 295. See the elaborate and scholarly opinion in *Bradley v. S. L. Savidge, Inc.,* 13 Wash. 2d 28, 123 P. 2d 780, where decisions are collected from the Federal Courts, from 29 States, and from the District of Columbia, including North Carolina, which announce and adhere to the rule that the presumption or inference of fact as to agency in cases of the nature of the case here is overcome by evidence which is uncontradicted, clear and convincing, regardless of whether it comes from interested or disinterested witnesses.

G.S. 20-71.1(b) is not applicable, for the reason that plaintiff has neither allegation nor proof as to the registration of the 1946 Plymouth.

The question presented for decision is this: Does plaintiff's own proof rebut the rule of evidence created by G.S. 20-71.1(a), and show that Arnold Charlie Pope was driving defendant's Plymouth automobile at the time of the collision here without defendant's authority, consent and knowledge, and was not at the time defendant's agent, servant or employee acting in the course and scope of his employment in the very transaction out of which plaintiff's injuries arose?

*Teague, et al., v. Pritchard, et al.,* Court of Appeals of Tennessee, 2 March 1954, *certiorari* denied by Supreme Court 23 July 1954, 279 S.W. 2d 706, is directly in point, because Tennessee has two statutes substantially similar to G.S. 20-71.1. These four cases, which were tried jointly, arose out of an automobile collision on 16 May 1952, in Memphis, Tennessee, when the car of plaintiff, Edgar Teague, driven

by the plaintiff, Laverne Teague, and occupied by the other plaintiffs, was struck by a Ford station wagon owned by the defendant, Ralph Pritchard, negligently operated by an unidentified youth about eighteen years of age, who ran a stop light. The young driver ran off immediately after the collision, and has never been apprehended or identified. The suits were for personal injuries and property damage. Upon the trial plaintiffs offered substantial evidence as to their injuries and the negligence of the driver of the Ford station wagon, that the defendant, Pritchard, had loaned the car to the defendant, Mrs. Williams, to collect certain rentals for Mr. Pritchard, that the car was left parked at night by Mrs. Williams during the Cotton Carnival while she had gone to Mississippi for a visit, and soon therafter some unidentified person, without the knowledge or permission of the owner, Pritchard, or the bailee, Mrs. Williams, took the station wagon and caused plaintiffs' injuries sued on in this cause. Upon the conclusion of plaintiffs' evidence, the defendants moved for, and were granted directed verdicts in each of the four cases. Plaintiffs appealed to the Court of Appeals. In the Court of Appeals they insisted they were entitled to go to the jury by reason of the provisions of Sections 2701 and 2702 of the Tennessee Code, which sections are quoted in the Court's opinion. These sections of the Code quoted in the Court's opinion are set forth in Tennessee Code, Annotated, Official Edition, Volume 10, 59-1037 and 59-1038. Sections 2701 and 59-1037, which are indentical, read as follows: *"Prima facie evidence of ownership of automobile and use in owner's business. —* In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of such vehicle, shall be *prima facie* evidence that said vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose." Sections 2702 and 59-1038, which are identical, read as follows: *"Registration prima facie evidence of ownership and that operation was for owner's benefit.*—Proof of the registration of said motor propelled vehicle in the name of any person, shall be *prima facie* evidence of ownership of said motor propelled vehicle by the person in whose name said vehicle is registered; and such proof of registration shall likewise be *prima facie* evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment." Section 2702 and 59-1038 were not applicable, because, after Prit-

chard's attorney admitted Pritchard owned the automobile involved in the collision, plaintiffs offered no evidence as to the registration of the car. The Court said: "However, if we assume that the plaintiffs' attorney understood defendant to be admitting the registration as well as the ownership, we do not think that this would give him the right to go to the jury on the presumption created by Sections 2701 and 2702. Our Courts have often held that this presumption is rebuttable in the face of credible evidence that the car at the time of the injuries complained of was driven without the owner's permission. *Wright v. Bridges,* 16 Tenn. App. 576, 65 S.W. 2d 265; *Southern Motors v. Moton,* 25 Tenn. App. 204, 154 S.W. 2d 801; *McMahan v. Tucker,* 31 Tenn. App. 429, 216 S.W. 2d 356. In the instant case plaintiffs' own proof rebuts the presumption and shows that the car was driven without the knowledge or permission of both defendants. . . . From a consideration of all the evidence in an aspect most favorable to the plaintiffs, as required by our decisions, we find that the evidence was insufficient upon which a jury could predicate a verdict in favor of the plaintiffs and, hence, it was the duty of the Trial Court to direct a verdict for the defendants, as he did in this case. *Lawson v. City of Chattanooga,* 37 Tenn. App. 309, 263 S.W. 2d 538, 543." The judgments of the lower court were affirmed.

We have examined the statutes of a number of the States concerning the same subject matter as our G.S. 20-71.1. There are many variations of this statutory rule of evidence. Of all the statutes we have examined, the Tennessee statutes alone are almost identical with our own. For instance, the Massachusetts statute, Annotated Laws of Massachusetts, Vol. 8, C. 231, §85A, provides that "evidence that at the time of such accident or collision it was registered in the name of the defendant as owner shall be *prima facie* evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible, and absence of such responsibility shall be an affirmative defense to be set up in the answer and proved by the defendant."

In *Felski v. Zeidman,* 281 Pa. 419, 126 A. 794, the facts were these: "On May 16, 1922, the plaintiff, John Felski, with his wife and three sons, was passing along Eighth street, Charleroi, in an automobile, and when crossing McKean avenue an auto truck so violently collided with the automobile as to demolish it and kill plaintiff's wife. The truck was owned by the defendant, Jacob Zeidman, a furniture dealer, and the accident apparently happened by the fault of the driver, Louis Glenn. It was developed, however, by witnesses called for plaintiff, that Glenn was not in defendant's employ, had taken the

truck without leave, and was using it for a purpose of his own. Under such circumstances the trial judge granted a nonsuit, and the refusal to take it off forms the basis of this appeal by plaintiff." The Court said: "True, it was a business truck with defendant's name thereon, which would raise a presumption that it was being used in his business (*Sieber v. Russ Bros. Ice Cream,* 276 Pa. 340, 120 A. 272; *Williams v. Ludwig Floral Co.,* 252 Pa. 141, 97 A. 206; *Holzheimer et ux. v. Lit Bros.,* 262 Pa. 150, 105 A. 73); but in the instant case this presumption cannot stand in the face of the evidence of plaintiff's witnesses to the contrary. Had the defendant offered oral testimony to rebut the presumption, its credibility would have been for the jury (*Gojkovic v. Wageley et al.,* 278 Pa. 488, 490, 123 A. 466, and cases there cited), but plaintiff cannot question the credibility of his own uncontradicted witnesses. Moreover, he was bound by the testimony of the defendant, given as under cross-examination, for it was neither contradicted nor qualified (*Krewson, Ex'x, v. Sawyer et al., Ex'rs,* 266 Pa. 284, 287, 109 A. 798; *Dunmore et ux v. Padden,* 262 Pa. 436, 439, 105 A. 559), and that testimony was fatal to plaintiff's case."

The following cases are cases where the plaintiff was nonsuited at the close of his evidence on the same principle as set forth in *Felski v. Zeidman, supra; Magee v. Hargrove Motor Co.,* 50 Idaho 442, 296 P. 774; *Kish v. California State Automobile Assn.,* 190 Cal. 246, 212 P. 27; *Rawlings v. Clay Motor Co.,* 287 Ky. 604, 154 S.W. 2d 711. See also, *Potts v. Pardee,* 220 N.Y. 431, 116 N.E. 78; *Potchasky v. Marshall,* 211 App. Div. 236, 207 N.Y.S. 562.

In 5 A.L.R. 2d 196 — 249 appears a most helpful Annotation entitled "Overcoming inference or presumption of driver's agency for owner, or latter's consent to operation, of automobile." On page 199, §2, it is stated: "That the presumption or the inference of an owner's consent to another's operation of his automobile, or the agency of such operator, arising from proof of ownership, or proof of ownership coupled with proof that the driver was in the general employment of the owner, is rebuttable and will be overcome by proper countervailing evidence, is universally held or conceded." This is said on page 237, §9: "The common-law presumption flowing from proof or admission of ownership of the car, in some jurisdictions with, and in others without, proof that the driver was in the general employment of the owner, that at the time of accident the driver was acting in the business of the owner and within the scope of his employment, is made statutory in some jurisdictions. Generally speaking, the rules formulated and applicable to the rebuttal of the common-law presumption are applicable to the rebuttal of the identical statutory presumption."

What this Court said in an unanimous opinion in *S. v. McNeill,* 225 N.C. 560, 35 S.E. 2d 629, is apposite here: "The only question presented by this appeal is the sufficiency of State's evidence to carry the case to the jury. The State offered the testimony of two officers to the effect that on the occasion alleged they found in defendant's bedroom in her home three pints of untax-paid whiskey in a jar. However, one of these witnesses testified that the defendant, the mother of three children, was present, and that she said she had the whiskey there for a sick child. This testimony which came from the witness offered by the State, was the only evidence on this point, and was uncontradicted. The defendant offered no evidence. There was no evidence that the liquor here in question was being kept for the purpose of being sold. The State's evidence, by incorporating and offering as worthy of belief the defendant's declaration, negatived possession for the purpose of sale. But it was contended that the *prima facie* effect given possession of intoxicating liquor by G.S., 18-11, was sufficient to carry the case to the jury. With this we cannot agree." The ruling of the lower court in denying defendant's motion for judgment of nonsuit was reversed. The authority of the *McNeill* case on this precise point is not impaired in any degree by *S. v. Hill,* 236 N.C. 704, 73 S.E. 2d 894, which overrules it and *S. v. Peterson,* 226 N.C. 255, 37 S.E. 2d 591 "to the extent, and only to the extent, that they hold that the *prima facie* evidence rule created by G.S. 18-11 is not applicable to prosecutions based on criminal accusations which employ the phraseology of G.S. 18-50 and charge in express terms that the intoxicating liquor allegedly possessed for the purpose of sale was of the 'illicit' or 'non-tax paid' variety." *S. v. Hall,* 240 N.C. 109, 81 S.E. 2d 189.

Considering plaintiff's evidence in the light most favorable to her, as we are required to do in passing on a motion for judgment of involuntary nonsuit, the statutory rule of evidence created by G.S. 20-71.1(a) —the subsection (b) is not applicable here — is rebutted and overcome by the clear, convincing and uncontradicted declarations of defendant, which plaintiff introduced in evidence as part of her case and offered as worthy of belief, and which show that Arnold Charlie Pope was driving defendant's Plymouth automobile at the time of the collision here without defendant's authority, consent, and knowledge, and was not at the time defendant's agent, servant or employee acting in the course and scope of his employment in the very transaction out of which plaintiff's injuries arose. Such evidence offered by plaintiff is fatal to her case.

The judgment of involuntary nonsuit is
Affirmed.