BONNIE J. MARSHALL, PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS J. MARSHALL, DECEASED, APPELLANT, V. DAWSON COUNTY PUBLIC POWER DISTRICT, APPELLEE.

578 N.W. 2d 428

Filed May 8, 1998.   No. S-96-1136.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Steven E. Guenzel, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, for appellee.

Patrick W. Healey, of Healey & Wieland Law Firm, for amicus curiae Nebraska Rural Electric Association.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

Following the death of her husband due to electrocution, the appellant, Bonnie J. Marshall, as personal representative of the estate of Thomas J. Marshall, brought a claim pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1991 & Cum. Supp. 1994), against the appellee, Dawson County Public Power District (DCPPD). Marshall alleged that her husband was electrocuted due to the failure of DCPPD to inspect wiring on a boat dock not owned by DCPPD and to warn Thomas Marshall of dangerous wiring on the boat dock. The district court determined that DCPPD did not have a duty to inspect the wiring on the boat dock and granted summary judgment to DCPPD. We conclude there is no duty on the part of a public utility to inspect lines owned or controlled by its customers unless the public utility has actual notice of a dangerous condition. We affirm.

## BACKGROUND

In 1989, Bonnie and Thomas Marshall purchased a cabin located at Johnson Lake. The Mallard Beach Association, an association of cabin owners at Johnson Lake, maintained a dock on the lake. Members of the association were assessed dues to pay for upkeep of the dock and worked together to keep the dock in repair. Members of the association removed the dock from the lake each fall and placed it back in the lake each spring. The dock was equipped with a system of lights powered by electricity. DCPPD supplied power to the dock through a line that was attached to a meter pole 6 feet from the dock. There is no dispute between the parties that the electric line up to the meter was owned by DCPPD, while the lines past the meter, including the electric lines on the dock, were not DCPPD's property. Rather, the electric wiring past the meter is referred to by both parties as being "the customer's," who is presumably the Mallard Beach Association.

On July 8, 1993, a severe storm passed through the Johnson Lake area, moving several sections of the dock out of alignment and damaging service to the meter pole. As a result, two linemen from DCPPD replaced the powerline running to the meter pole. When the linemen performed the repair, they observed there was no load on the electrical system. Specifically, they saw what appeared to be a residential electric fuse box attached to the meter pole with the disconnect switch set to the "off" position. In addition, the meter included a plug outlet that had nothing plugged into it, and no lines were leading out of the service boxes below the meter. Because a line was not connected or plugged into the service box and the disconnect switch was off, the linemen perceived no risk associated with reenergizing the system and they proceeded to do so. The linemen did not look at or go onto the dock because they saw no reason to do so. The record reflects that the linemen were not trained in the National Electric Code because power distribution does not fall under the scope of that code. Rather, it is the wiring beyond the customer's meters, such as the wiring on the boat dock, that is governed by the National Electric Code.

On July 25, 1993, Thomas Marshall assisted other members of the Mallard Beach Association in realigning the damaged

sections of the dock. While working on the dock, Thomas Marshall came in contact with electricity from the dock lighting and was electrocuted. An electrical inspector for the State of Nebraska inspected the dock's wiring on August 19, found violations of the National Electric Code, determined that the dock wiring was "proximately dangerous" to human life, and issued a disconnect notice for the electrical service to the dock.

Marshall filed the instant action pursuant to §§ 13-901 to 13-926, alleging that DCPPD was negligent in failing to inspect the dock and warn of the danger. DCPPD's answer did not allege that any of the exceptions to coverage of the Political Subdivisions Tort Claims Act in § 13-910 applied. At the summary judgment hearing, Marshall offered into evidence exhibit 8. Exhibit 8 purported to be an expert opinion regarding what the linemen could have or should have seen regarding the condition of the wiring on the dock if they had looked at it. The district court refused to admit exhibit 8 because the opinion was beyond the expertise of the witness and was not relevant. The court then determined that DCPPD did not have a duty to inspect the electric wiring on the dock and granted summary judgment in favor of DCPPD.

## ASSIGNMENTS OF ERROR

In summary, Marshall assigns that the district court erred in (1) determining that DCPPD did not have a duty to inspect the dock and warn of the electrical hazards on the dock, (2) granting summary judgment to DCPPD, and (3) failing to admit exhibit 8 into evidence.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998); *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

## ANALYSIS

Marshall contends that DCPPD had a duty to inspect the dock and warn of the dangerous nature of its wiring because the dangerous nature of the wiring would have been readily apparent had the linemen looked at the dock. Essentially, Marshall contends that DCPPD should have known that the wiring on the dock was defective and, in light of this, should have refused to reenergize the lines or should have warned Thomas Marshall of the danger. DCPPD contends that it does not have a duty to inspect a customer's wiring unless it has actual notice of a danger.

A power company engaged in the transmission of electricity is required to exercise reasonable care in the construction and maintenance of its lines. *Engleman v. Nebraska Public Power Dist.*, 228 Neb. 788, 424 N.W.2d 596 (1988); *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987). However, power companies are not insurers and are not liable for damages in the absence of negligence. *Engleman v. Nebraska Public Power Dist., supra*; *Tiede v. Loup Power Dist., supra.* It is well settled that unless a public utility has actual knowledge of a dangerous condition, the public utility has no duty to inspect or maintain power wires or appliances before supplying electrical power when those wires or appliances are owned or controlled by the customer. *Central Power & Light Co. v. Romero*, 948 S.W.2d 764 (Tex. App. 1996); *Carter v. Bangor Hydro-Elec. Co.*, 598 A.2d 739 (Me. 1991); *Upton v. Magnolia Elec. Power Ass'n*, 511 So. 2d 939 (Miss. 1987); *Jenks v. Hill*, 504 F. Supp. 1130 (W.D. Okla. 1981); *Summers v. Union Elec. Co.*, 565 S.W.2d 677 (Mo. App. 1978); *New Mexico Electric Service Co., Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); *Kroger v. Omaha Public Power District*, 523 F.2d 161 (8th Cir. 1975) (applying Iowa law); *Naki v. Hawaiian Elec. Co.*, 50 Haw. 416, 442 P.2d 55 (1968); *Martin v. Northern States Power Co.*, 245 Minn. 454, 72 N.W.2d 867 (1955); *Delaney v. Town of Etowah*, 182 Tenn. 386, 187 S.W.2d 531 (1945); *Oesterreich v. Claas*, 237 Wis. 343, 295 N.W. 766 (1941).

In the instant case, it is undisputed that the wiring beyond the meter pole, including the wiring on the dock, was owned and controlled by the customer and not by DCPPD. It is also undis-

puted that DCPPD did not have actual knowledge or notice of any defects in the wiring on the dock. Marshall's allegation that DCPPD "should have known" of the dangerous wiring because it would have become obvious if the linemen had looked at the dock is not sufficient to create a duty of inspection on the part of DCPPD. See, e.g., *Jenks v. Hill, supra* (constructive knowledge is insufficient where public utility has no independent duty to inspect, maintain, or repair). Accordingly, DCPPD did not have a duty to inspect or maintain the wiring of the dock, and summary judgment was appropriate.

Having determined that there was no duty on the part of DCPPD to inspect the dock, we also determine that the refusal of the trial court to admit into evidence exhibit 8, an exhibit purporting to give an opinion of what the linemen could have or should have seen had they inspected the dock, was appropriate. The order of the district court is affirmed.

AFFIRMED.