ROMAN ORTIZ, Respondent, *v.* WILLIAM F. UHL et al., Individually and Doing Business as UHL, HALL & RICH, et al., Appellants.

Fourth Department, May 25, 1972.

144

*Phelps, Gray, Mansour & Hewitt (Salem G. Mansour* and *Joseph J. Mansour* of counsel), for appellants.

*Moot, Sprague Marcy, Landy & Fernbach (John J. Phelan* of counsel), for respondent.

Marsh, J. Defendants appeal from a judgment pursuant to a jury verdict in favor of plaintiff in the amount of $129,000.07 and from an order which denied their motion to set aside the verdict and dismiss the complaint.

Plaintiff was injured while employed by Merritt, Chapman and Scott (Merritt), general contractor of the Lewiston power plant. The defendants are the New York State Power Authority (Authority), the owner of the project, and Uhl, Hall and

Rich who, pursuant to the contract, had the responsibility for the design and supervision of the project.

The Lewiston power plant work area extended approximately 1,700 feet along the Niagara River and approximately 575 feet from the river to the top of the gorge. All construction materials were lowered into position by means of three cranes which moved on rails installed over the work area. Plaintiff was operating a jack hammer at the time he was struck by a bottle of oxygen which fell from one of the crane's rigging. It was undisputed that the Authority did not furnish Merritt with any tools, equipment or employees, and that it would not make any determination as to the methods by which the contractor should perform the required work. The Authority did not reserve to itself any portion of the contract of the power plant. It was also undisputed that operation of the cranes was within the exclusive control of the general contractor.

It was necessary for Merritt to work over the entire surface of the gorge and there was no practical way of providing overhead protection. To do so would have made it impossible to lower materials into place. It appears clear, however, that the procedure which the contractor utilized in rigging bottles of gas was hazardous and not in accordance with recognized safety practice.

Uhl, Hall and Rich made the progress engineering study and prepared the specifications for materials and equipment. They inspected all materials and equipment as necessary and administered the construction program which included the co-ordination, scheduling, layout, supervision and inspection of various contracts. They inspected everything to make sure it was built according to the plans and specifications and had a staff of safety personnel on the job site.

The court charged the jury that plaintiff could not recover from either defendant if Merritt's negligence was the sole cause of injury to plaintiff. The court further charged that neither defendant was responsible for the "manner, method and means" used by Merritt in the performance of its work, and that neither defendant had the duty to make safe the equipment used by the contractors. The jury was further instructed that "there is no evidence in this case that either of the defendants ordered, directed or determined the manner, method or means by which Merritt, Chapman & Scott was moving an oxygen tank in the work area at the time of the accident." The jury was instructed, however, that liability

could be based upon a finding that the defendants failed to provide a safe place to work. " [T]here is a very general rule of law which states that the owner of property * * * has a duty to workmen on the property of the owner to use reasonable care to keep the places of work which are under the control of the owner reasonably safe. An owner is also responsible to remedy any unsafe * * * condition which is known to exist in the place of the work which are under the owner's control." The court paraphrased section 200 of the Labor Law which requires that certain places must be so constructed, equipped and conducted as to provide reasonable protection to the lives and safety of all persons employed therein. Appellant's primary contention on this appeal is that the charge in this respect was erroneous because the " safe place to work doctrine " imposes no liability upon the owner for the lack of safety arising out of the equipment and methods utilized by the contractor.

It is well established that the owner's duty is to furnish a safe place to work only insofar as its *own* plant facilities are concerned (*Persichilli* v. *Triborough Bridge & Tunnel Auth.,* 16 N Y 2d 136, 145; *Zucchelli* v. *City Constr. Co.,* 4 N Y 2d 52, 55, 56; *Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377, 381, 382; *Hess* v. *Bernheimer & Schwartz Brewing Co.,* 219 N. Y. 415, 418; *Grant* v. *Rochester Gas & Elec. Corp.,* 20 A D 2d 48, 49, 50). The obligation of the owner to furnish a safe place to work does not include the contractor's own plant or the very work which it is performing. This distinction was clearly illustrated in the *Hess* case (219 N. Y. 415, *supra*): " While the employer must exercise reasonable care to have his own plant safe for the employees of the contractor, he does not stand in the shoes of the contractor and become liable for the latter's negligence. If the employer furnishes a ladder or a scaffold for the contractor's employees to work on he must be careful to furnish a safe appliance * * * but if the contractor furnishes such appliances the employer does not thereby become responsible for their sufficiency. They are no part of the employer's plant; failure to furnish them is not a defect in the employer's plant ". (219 N. Y., at pp. 418–419.) This principle was recognized in the recent case of *Bidetto* v. *New York City Housing Auth.* (25 N Y 2d 848). There the decedent was fatally injured when bricks which his employer was placing on a floor above where he was working fell on him. In holding that there was no cause of action against the owner of the premises, the court noted that the

open space "which was to be filled in as the wall was constructed was not an area of common usage in the construction over which the owner retained control." Since the place where the accident occurred was under construction, the court rejected the contention that the owner was liable on the theory that it failed to provide a safe place to work.

It is equally well established that the retention of the power of general supervision over the work does not alter this rule of nonliability (*Grant* v. *Rochester Gas & Elec. Corp.*, 20 A D 2d 48, *supra*; see *Zucchelli* v. *City Constr. Co.*, 4 N Y 2d 52, *supra*; 2B Warren's Negligence, ch. 34, Contractors, § 5.03, subd. [7]).

*Caspersen* v. *La Sala Bros.* (253 N. Y. 491), cited by respondent, merely expresses the principle "that an owner, acting as general contractor in the construction of a building, and exercising general control and superintendence, owes to the employees of a subcontractor the duty of exercising reasonable care *to make safe the places of work provided by him* [emphasis supplied] and the ways and approaches to such places." (*Iacono* v. *Frank & Frank Contr. Co.*, 259 N. Y., at pp. 381–382.)

The undisputed facts in the instant case reveal that the accident arose out of the improper use of the contractor's own facilities. The cranes were constructed, operated and maintained by the contractor as its own plant facilities and the accident occurred during the contractor's performance under the contract. The Authority did not maintain control of the crane apparatus and the negligence of the contractor's employees is not attributable to the owner. The "place" the owner must keep safe does not include the contractor's own equipment or the very work under progress. Section 241 of the Labor Law has no application to the determination of defendants' liability. That statute deals "with the duty of safeguarding openings in floors and shaftways and the planking over of open spaces, a duty similar to that of protecting common walks and ways which is ordinarily imposed upon the owner and general contractor." (*Conte* v. *Large Scale Development Corp.*, 10 N Y 2d 20, 28). Section 3–8 of Industrial Code No. 23 (now 12 NYCRR 23.3 [h]) which plaintiff contends should have been charged appears to have been promulgated by the Board of Standards and Appeals of the New York State Department of Labor pursuant to section 200 of the Labor Law and not section 241. In any event its requirements could not be followed in the construction of the

power plant: "Every place where persons are required to work or to pass that is normally exposed to falling material or objects shall be provided with suitable overhead protection, and where no one is required to work or pass but employees are at work in the vicinity, the exposed area shall be roped off or otherwise guarded against inadvertent entry."

It is clear that it was not feasible to provide overhead protection without rendering performance of the contract impossible. The owner is required to provide a safe place to work only to the extent that such is practicable within the context of the ongoing project under construction (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491, *supra*).

The accident occurred because of the improper method used by the contractor's employees to secure the bottle of gas to the crane and its negligence in that respect may not properly be attributable to the owner or engineers, notwithstanding that the owner's general supervisory agents may have had actual notice of the improper method (*Ehrlich* v. *C. B. S. Columbia*, 9 A D 2d 943, affd. 8 N Y 2d 1113).

Since there is no basis for finding liability on the theory that defendants failed to provide a safe place to work, the judgment and the order denying the motion to set aside the verdict should be reversed and the complaint dismissed.

GOLDMAN, P. J., GABRIELLI, MOULE and CARDAMONE, JJ., concur.

Judgment and order unanimously reversed, on the law and facts, without costs and complaint dismissed.