554 P.2d 986

**Nancy G. FRESQUEZ, Administratrix of the Estate of Juan A. Fresquez, Deceased, and General Accident Fire and Life Assurance Corporation, Ltd., Plaintiffs-Appellants,**

**v.**

**SOUTHWESTERN INDUSTRIAL CONTRACTORS AND RIGGERS, INC., and Bradbury and Stamm Construction Co., a corporation, Defendants-Appellees.**

**No. 2444.**

Court of Appeals of New Mexico.

Sept. 14, 1976.

Certiorari Denied Oct. 21, 1976.

Quincy D. Adams, Adams & Foley, Albuquerque, for Fresquez.

Jim Dines, Shaffer, Butt, Jones & Thornton, Albuquerque, for General Accident Fire & Life Assur. Corp.

James C. Ritchie, Victor R. Marshall, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Southwestern Industrial Contractors & Riggers, Inc.

C. LeRoy Hansen, Civerolo, Hansen & Wolf, Albuquerque, for Bradbury and Stamm Const.

## OPINION

WOOD, Chief Judge.

Bradbury (Bradbury and Stamm Construction Co., a corporation) was the general contractor for the construction of a school. Turzillo (Lee Turzillo Contracting Co.) was a subcontractor engaged in drilling and setting pilings for the foundation. Turzillo performed this work by means of an auger cast system. The auger drilled a hole to a predetermined depth; concrete or grout was pumped into the hole. Turzillo rented a crane from Southwestern (Southwestern Industrial Contractors and Riggers, Inc). The crane was used to position, raise, lower and stabilize Turzillo's equipment. Fresquez (Juan A. Fresquez, deceased) was employed by Turzillo as a laborer; he cleared material away from the auger. A piece of the stabilizing equipment broke, fell, struck and killed Fresquez. The administratrix seeks damages for the death from Southwestern and Bradbury. General Accident Fire and Life Assurance Corporation, Ltd., was the workmen's compensation insurer of Turzillo and seeks reimbursement of the compensation paid in connection with Fresquez' death.

The trial court granted summary judgment in favor of both defendants; plaintiffs appeal. The issues concerning the claim against Southwestern involve: (1) the special employee doctrine; (2) alleged negligence of Southwestern independent of negligence of the crane operator; and (3) res ipsa loquitur. The issues concerning the claim against Bradbury involve: (4) alleged negligence of subcontractor attributable to Bradbury, and (5) failure of Bradbury to provide Fresquez a safe place to work.

### Special Employee Doctrine

Barlow was the crane operator. His general employer was Southwestern.

When Turzillo rented the crane from Southwestern, Barlow came along with the crane. Southwestern did not rent a crane without providing an operator. Turzillo paid for the crane and operator as one lump-sum.

Barlow performed "work as directed" by Turzillo. The uncontradicted showing was that Barlow did in fact work as directed. Turzillo's employees told Barlow where to locate the crane and when and where to use the crane. Turzillo's employees controlled the operation of the crane in positioning the auger and in raising or lowering the boom of the crane. Turzillo determined Barlow's hours of work and could run Barlow off the job if dissatisfied with Barlow's work. The uncontradicted showing is that Turzillo not only controlled, but had the right to control Barlow in the work being performed. It is also uncontradicted that the crane, and its operation, became an integral part of Turzillo's work in drilling and setting pilings.

On the basis of this showing, the trial court granted summary judgment in favor of Southwestern, ruling "as a matter of law that William Barlow was a special employee of Lee Turzillo Contracting Company in the performance of his duties at the time of the accident".

If the above showing covered all of Barlow's duties, we would agree that Barlow was a special employee of Turzillo and any negligence on Barlow's part could not be charged to Southwestern. See *Shipman v. Macco Corporation*, 74 N.M. 174, 392 P.2d 9 (1964); *Huff v. Dunaway*, 63 N.M. 121, 314 P.2d 722 (1957); *Dunham v. Walker*, 60 N.M. 143, 288 P.2d 684 (1955). For crane cases, see *Truitt v. B & G Crane Service, Inc.*, 165 So.2d 874 (La.App.1964); *Kessler v. Bates & Rogers Const. Co.*, 155 Neb. 40, 50 N.W.2d 553 (1951).

The above showing does not cover Barlow's duties in connection with the safety of crane operation. We consider safety matters in the light of whose work was being performed and who had the right to control that work. *Yerbich v.*

*Heald,* 89 N.M. 67, 547 P.2d 72 (Ct.App. 1976).

Pipe frame leads are used in the operation of the auger. "The leads is what the auger and gearbox that make and place the pile run up and down." The rotation of the auger would cause the leads to twist around. A torque arm was used to steady the leads and prevent them from rotating. The safety matters with which we are concerned involve the torque arm.

The torque arm was a piece of pipe. It extended from the leads to the boom of the crane, and beyond. One end of the pipe was connected to the leads. A sleeve was connected to the boom of the crane. The pipe went through the sleeve, was held up by the sleeve and would travel in the sleeve when the boom of the crane was moved. A pin at the end of the pipe kept the pipe from coming out of the sleeve. When in place, the pipe was roughly horizontal and somewhere between 25 and 40 feet above the ground. Safety cables were employed in two places: (1) the connection of the pipe to the leads, and (2) the connection of the sleeve to the boom of the crane.

The auger was coming out of the hole and concrete or grout was being pumped into the hole as the auger came out. The boom of the crane was not in motion; Barlow was awaiting a signal from Turzillo's employees to move the boom. The pipe of the torque arm extended somewhere between 10 to 20 feet beyond the end of the sleeve. The pipe broke just beyond the end of the sleeve, fell and killed Fresquez.

Deposition testimony is to the effect that a chain or cable would have kept the broken piece of pipe from falling. After the accident, Barlow was involved with Turzillo in replacing the torque arm. The setup was as before. However, the new arm (or pipe) was placed much closer to the ground and Barlow "put the safety through it."

Whose work was involved in these safety matters and who had the right to control the safety matters? The showing on this involves three items. 1. There is a showing that Turzillo personnel were not allowed to operate the crane and that Southwestern left the operation of the crane up to its personnel. If the crane operator "doesn't feel it's safe to operate, he can stop it." There is a showing that Barlow complained that the setup with the torque arm was unsafe several days before the accident. 2. There is a showing that if the operator of the crane felt a dangerous condition existed, he would first go to the foreman of the company renting the crane and if the operator "didn't receive satisfaction" at that point, the operator was to report to Southwestern. There is a showing that Barlow complained of the torque arm setup to Turzillo but obtained no satisfaction. Barlow did not report the matter to Southwestern. 3. There is a showing that Barlow had full authority to say "Yes" or "No" to attaching anything to the crane. There is a showing that Barlow never inspected the torque arm setup (which Turzillo installed) before the accident.

■ Admittedly, the showing in the above three items is contradicted. However, it is not the function of the trial court to weigh evidence in summary judgment proceedings. *Johnson v. J. S. & H. Construction Co.,* 81 N.M. 42, 462 P.2d 627 (Ct.App.1969). The above three items raised material issues of fact as to whether the safe operation of the crane was Southwestern's work and as to whether Southwestern had a right to control safety matters. Summary judgment on these matters was improper. *Goodman v. Brock,* 83 N. M. 789, 498 P.2d 676 (1972). Whether Barlow was or was not a special employee of Turzillo in connection with safety matters in the operation of the crane is a factual question for the jury.

## Independent Negligence of Southwestern

■ This issue is concerned with negligence of Southwestern apart from any negligence of Barlow, the crane operator. In their brief, plaintiffs itemize five items of alleged negligence by Southwestern which they claim are independent of any "special employee" issue and therefore independent of any alleged negligence of Barlow.

We do not consider these items. All of the allegations of negligence in the amended complaint involve actions of Barlow in connection with the torque arm. None of the allegations of negligence in the amended complaint involve the five items relied on in the brief. The five items were not pleaded. We do not know whether any of the five items were considered by the trial court in ruling on Southwestern's motion for summary judgment. No record was made of the summary judgment hearing. The record before us is to the effect that the five items of alleged negligence, independent of Barlow's actions, are raised for the first time on appeal. Rule 11 of Rules of Appellate Procedure in Civil Cases. They will not be considered.

## Res Ipsa Loquitur

■ The amended complaint alleges that Southwestern and Turzillo "had joint and exclusive control of the torque arm" and that plaintiffs are entitled to rely on res ipsa loquitur in seeking to hold Southwestern liable for the death of Fresquez. Contending that res ipsa loquitur is applicable, plaintiffs assert the summary judgment in favor of Southwestern was erroneous. We disagree.

The allegation in the amended complaint did not present an issue concerning res ipsa loquitur because it relied on "joint and exclusive" control. *Waterman v. Ciesielski*, 87 N.M. 25, 528 P.2d 884 (1974) reaffirmed prior New Mexico law that for res ipsa loquitur to apply, the control by the defendant must be exclusive. *Waterman*, supra, states: "In at least one case, this court has used, in conjunction with 'exclusive,' the adjective 'sole' to emphasize that the instrumentality and occurrence proximately causing the injury must be under the control of the defendant *alone*." (Our emphasis.) Under *Waterman*, an allegation of joint control is insufficient to invoke the doctrine of res ipsa loquitur.

## Negligence of Subcontractor Attributable to Bradbury

■ The amended complaint alleges that Bradbury was negligent in failing to supervise the work being done by Southwestern to avoid the dangerous condition with the torque arm. Plaintiffs' brief asserts that the work being performed by Turzillo was inherently dangerous. We do not concern ourselves with whether plaintiffs are claiming the work was being done by Southwestern or Turzillo. Plaintiffs' general contention is that the work involved was inherently dangerous, and that Bradbury is liable for negligence of subcontractors in performing this work. See Prosser, Law of Torts (4th Ed. 1971) page 472.

We assume, but do not decide, that there is a factual issue as to whether the torque arm assembly was inherently dangerous. The assumption does not aid the plaintiffs.

Restatement of the Law, Torts 2d, §§ 413, 416 and 427 (1965) deals with work involving a peculiar unreasonable risk of harm, work dangerous in the absence of special precautions and work involving a special danger inherent in or normal to the work. These Restatement sections cover the subject matter of plaintiffs' claim under this issue.

*New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976) discussed the duties imposed upon the employer of an independent contractor by the above cited Restatement sections. These duties apply to third persons when inherently dangerous work is involved. *Montanez*, supra, holds that these duties are not applicable to employees of independent contractors.

Under *Montanez*, supra, Bradbury was not liable for negligence of subcontractors in performing inherently dangerous work.

*Safe Place to Work*

The amended complaint alleges that Bradbury was negligent in failing to take steps to prevent the operation of the torque arm assembly, in violating one or more unidentified safety regulations, and in failing to provide a safe place to work. These allegations, in essence, are a claim that Bradbury failed to provide Fresquez with a safe place to work.

Bradbury asserts that under *New Mexico Electric Service Co. v. Montanez,* supra, summary judgment was proper on the safe place to work claim. Bradbury's contention is that it had no duty to Fresquez in connection with inherently dangerous work, and logically should have no duty to Fresquez in situations involving work not inherently dangerous. The question is whether *Montanez,* supra, should be applied to the safe place to work claim.

*Montanez,* supra, quoted with approval two reasons relied on by a Kentucky court in holding that the employer had no duty to the employees of an independent contractor in situations involving inherently dangerous work. The Kentucky decision is *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659 (Ky.1973). The second of the two reasons approved in *Montanez,* supra, is stated as follows: "There does not seem to be any valid reason why an employer of an independent contractor for the performance of specific work should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work."

An employer in New Mexico has a duty to provide his employees a reasonably safe place to work. *Padilla v. Winsor,* 67 N.M. 267, 354 P.2d 740 (1960). As to safety devices, see *Hicks v. Artesia Alfalfa Growers' Association,* 66 N.M. 165, 344 P.2d 475 (1959).

The above quotation from *King,* supra, indicates an employer's liability to employees of independent contractors should not be greater than the employer's liability to his own employees. Because the employer had a duty to provide his employees with a safe place to work and would be liable for a breach of that duty (we do not consider the effect of our workmen's compensation law), we decline to hold that *Montanez,* supra, disposes of plaintiffs' safe place to work claim.

Plaintiffs' safe place to work claim is based on the special concurring opinion in *Srader v. Pecos Construction Company,* 71 N.M. 320, 378 P.2d 364 (1963). That opinion states that an employee of a subcontractor would be an invitee on the premises and the general contractor would owe such an employee "a duty of due care to supply her a safe place to work." See Annot. 20 A.L.R.2d 868 (1951).

The discussion in *New Mexico Electric Service Co. v. Montanez,* supra, casts doubt on whether a general contractor has a duty to provide a safe place to work for an employee of an independent contractor. See *Parsons v. Amerada Hess Corporation,* 422 F.2d 610 (10th Cir.1970). We assume, but do not decide, that the general contractor has such a duty.

We are not concerned with the extent of the duty. See *Proctor v. Waxler,* 84 N.M. 361, 503 P.2d 644 (1972) for the extent of the duty to an invitee.

Our concern is with the situations in which the duty arises. *DeArman v. Popps,* 75 N.M. 39, 400 P.2d 215 (1965) quoted extensively from *Wolczak v. National Electric Products Corp.,* 66 N.J.Super. 64, 168 A.2d 412 (1961). *Wolczak,* supra, indicates liability of the contractor may be based on either of two grounds— control of the premises or control of the work being performed. *Wolczak,* supra, states:

"Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the

premises or the manner in which the work is performed."

██ Plaintiffs contend the torque arm assembly created a dangerous condition in a common work area where employees of both the general and subcontractors were required to be. Thus, plaintiffs' "premises" contention is based on the jobsite, the physical location where the work was being performed. The "condition" giving rise to the duty, however, was not a condition existing within the jobsite apart from the torque arm assembly. "Premises" includes equipment or materials being worked on or repaired. *Texaco, Inc. v. Pruitt*, 396 F.2d 237 (10th Cir. 1968); *Titan Steel Corporation v. Walton*, 365 F.2d 542 (10th Cir. 1966). Thus, "premises" includes the torque arm assembly.

██ The uncontradicted showing is that the torque arm assembly was furnished and rigged by Turzillo, and that Turzillo was to furnish all safety devices in connection with the torque arm.

██ We assume Bradbury could be held liable on the basis of control of common premises or joint work space, but such liability depends on the injury resulting from "a hazard in joint space which has not been created by the employer of the workman injured." *Chesin Construction Co. v. Epstein*, 8 Ariz.App. 312, 446 P.2d 11 (1968). The "place" the general contractor must keep safe does not include the equipment of the independent contractor. *Ortiz v. Uhl*, 39 A.D.2d 143, 332 N.Y.S.2d 583 (1972), affirmed, 33 N.Y.2d 989, 353 N.Y.S.2d 962, 309 N.E.2d 425 (1974). Compare, *DeArman v. Popps*, supra, where the unsafe equipment was supplied by the owner's job superintendent.

Bradbury was not liable for the death of Fresquez on the theory that Bradbury controlled the premises.

The uncontradicted showing is that Bradbury did not exercise any control over Turzillo's operations. Compare, *DeArman v. Popps*, supra, as explained in *New Mexico Electric Service Co. v. Montanez*, su-

pra. Our concern is with Bradbury's right to control Turzillo's operations.

██ The contract between Bradbury and Turzillo provided that the leads of the auger should be prevented from rotating by a stabilizing arm. The showing is that the actual method of stabilization (the torque arm) was only one method of stabilization. There is nothing showing that the specific rig up of the torque arm was required by the contract. The showing is that the torque arm assembly was Turzillo's responsibility. The provision in the contract for a stabilizing arm did not raise a factual issue as to Bradbury's right to control Turzillo's rig up of the torque arm. *Hard v. Hollywood Turf Club*, 112 Cal.App.2d 263, 246 P.2d 716 (1952); see *Chesin Construction Co. v. Epstein*, supra.

There is a showing that Bradbury's superintendent was responsible for the safety of Bradbury's employees; if the superintendent saw a dangerous condition that could injure a Bradbury employee, he would tell the foreman to correct it. There is a showing that Bradbury's superintendent had authority to see that the job was correctly done; that if a subcontractor was producing a dangerous condition, the superintendent would instruct the subcontractor to "straighten it up." If the subcontractor did not comply, the superintendent would report the matter to the superintendent's superior. The superintendent had the responsibility for the total job, and this included decisions concerning safety. However, supervision of job safety on Turzillo's work was the duty of Turzillo.

██ The above showing is not a showing that Bradbury retained such a right of supervision so that Turzillo was not entirely free to do the work in its own way. Restatement of the Law, Torts 2d, § 414 (1965), comment (c). The above showing is a showing of the right of general superintendence necessary to insure the subcontractor performs his agreement. *Wolczak v. National Electric Products Corp.*, supra. The right in a general contractor to stop

the subcontractor from proceeding with the work if dangerous practices are observed, does not carry with it liability to the employees of the very same subcontractor causing the dangerous condition. *Chesin Construction Co. v. Epstein,* supra. The reasons for limiting liability are stated in *New Mexico Electric Service Co. v. Montanez,* supra, and *Chesin Construction Co. v. Epstein,* supra. Those reasons are applicable in this case. In so holding, we recognize that *Summers v. Crown Construction Company,* 453 F.2d 998 (4th Cir. 1972) is to the contrary.

Bradbury was not liable for the death of Fresquez on the theory that Bradbury either controlled or had the right to control the safety practices for the entire job.

Oral argument is unnecessary. The summary judgment in favor of Southwestern is reversed. The summary judgment in favor of Bradbury is affirmed. The cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.