895 P.2d 683

**Rodney POLLARD, Plaintiff–Appellant,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant–Appellee.**

No. 15478.

Court of Appeals of New Mexico.

April 6, 1995.

David W. Strickler, W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A. Carlsbad, for plaintiff-appellant.

Lisa B. Riley, McCormick, Forbes, Caraway & Tabor, Carlsbad, for defendant-appellee.

## OPINION

BOSSON, Judge.

This case arises from the asserted liability of a general contractor for negligence allegedly resulting in injury to the employee of a subcontractor. Plaintiff appeals from a summary judgment awarded in favor of the contractor. Finding genuine issues of material fact, we reverse and remand for trial.

*FACTS*

Westinghouse is the general contractor for the United States Department of Energy at the Waste Isolation Pilot Project (WIPP) at Carlsbad. Plaintiff was an employee of Dravo Engineering Company (Dravo), one of many subcontractors hired by Westinghouse to work at the WIPP site. At the time of the injury, Dravo was in the process of substituting hydraulic doors for manual doors which opened into a mine shaft. The Dravo crew hoisted a large drill to the surface of the shaft. While the drill was being unloaded, the guardrails around the shaft were removed, and Plaintiff, as instructed, attached himself to a safety line which connected to an anchor on the hoist guide at the top of the shaft. After the drill was unloaded, the guardrails were replaced and the crew took a break. When they returned to the job, Plaintiff alone reattached himself to the safety line. The operator of the hoist, a Dravo employee, raised a load of salt up the shaft. While the cage was being hoisted, Plaintiff's safety line, still stretched across the shaft, became caught by the mechanism. Plaintiff was lifted into the air, the safety line snapped, and Plaintiff fell some distance to the ground, suffering serious injury.

Plaintiff received workers' compensation from Dravo, and he brought suit against Westinghouse. Plaintiff advanced several theories for recovery from Westinghouse including strict liability for inherently dangerous activity, negligence per se for violation of certain statutes and regulations, and negligence under the Restatement (Second) of Torts §§ 343, 414 (1965) for failure to provide a safe work place and failure to exercise retained control over subcontractors in a prudent manner.

The trial court granted summary judgment without specifying any reasons or differentiating between the various theories. Because we recognize there are genuine issues of material fact in regard to the negligence claims arising under the Restatement, we need not address the other issues raised by the parties. We note, however, that our decision does not necessarily limit the parties from litigating the additional theories raised in the complaint.

## DISCUSSION

### I. *Summary Judgment*

■ Summary judgment is only appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Following a prima facie showing by the movant, the burden shifts to the party opposing the motion to provide evidence of an issue of material fact which would require a trial on the merits. *Id.* at 334–35, 825 P.2d at 1244–45. Summary judgment is inappropriate where the facts are reasonably susceptible to different inferences. *See Blauwkamp v. University of New Mexico Hosp.,* 114 N.M. 228, 236, 836 P.2d 1249, 1257 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992).

### II. *Restatement (Second) of Torts §§ 343, 414*

Westinghouse argues that Dravo alone had control over the means and manner of the work involved in this project, and Westinghouse retained only general superintendent authority. If true, then as a general proposition of law, this would be insufficient to create a duty of care in Westinghouse toward employees of a subcontractor. *See Fresquez v. Southwestern Indus. Contractors & Riggers, Inc.,* 89 N.M. 525, 530–31, 554 P.2d 986, 991–92 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976). However, Plaintiff argues that under Sections 343 and 414 of the Restatement there is such a duty of care where Westinghouse retains sufficient control over the premises and Dravo's work. This is also a correct statement of the law. New Mexico courts have applied these Sections of the Restatement. *See, e.g., Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 578, 734 P.2d 1258, 1261 (1987); *Requarth v. Brophy,* 111 N.M. 51, 54, 801 P.2d 121, 124 (Ct.App.1990).

■ In the context of Section 343, a possessor of land has a duty to exercise reasonable care to provide a safe work place for employees (invitees) of a contractor or subcontractor working on the premises, at least to the extent the possessor retains control over the premises. *Tipton v. Texaco, Inc.,* 103 N.M. 689, 694, 712 P.2d 1351, 1356 (1985); *Requarth,* 111 N.M. at 54, 801 P.2d at 124. Section 414 requires a contractor who retains some contractual control over a subcontractor's work to exercise that control in a responsible manner with regard for the safety of subcontractor employees. *See DeArman v. Popps,* 75 N.M. 39, 45–46, 400 P.2d 215, 218–19 (1965). Under both Sections 343 and 414, the extent of the duty owed by Westinghouse is to some degree a function of the kind of control either retained or exercised by Westinghouse over the work performed by Dravo. *See Requarth,* 111 N.M. at 54, 801 P.2d at 124; *see also Tipton,* 103 N.M. at 696, 712 P.2d at 1358; *DeArman,* 75 N.M. at 45–46, 400 P.2d at 218–19; *Fresquez,* 89 N.M. at 530–31, 554 P.2d at 991–92. This is primarily a fact-based question which does not lend itself easily to resolution by summary judgment.

■ Plaintiff presented the trial court with evidence sufficient to create such an issue of fact. Plaintiff notes a contract provision which arguably reserves to Westinghouse the right to direct Dravo to take such additional measures for the protection of Dravo employees, as Westinghouse "determines to be reasonably necessary." Westinghouse appeared

to retain the power of approval over promotions and the hiring of Dravo employees working on the WIPP project. Additional evidence indicates that: (1) Westinghouse specifically required compliance by Dravo employees with the Westinghouse safety manual; (2) Westinghouse instructed Dravo to correct specific safety deficiencies perceived by Westinghouse; (3) Westinghouse retained the right to approve the safety changes made by Dravo dealing with better management of safety lines after Plaintiff was injured; and (4) Westinghouse admonished Dravo after the accident that one of the Dravo employees had a bad safety attitude that needed to improve for continued employment with the WIPP project.

This evidence, if believed by a jury, would support the application to Westinghouse of the theories of negligence articulated in Restatement Sections 343 and 414. The jury could reasonably conclude that Westinghouse exercised more than a mere superintendent control over the project and the premises. *Cf. Valdez,* 105 N.M. at 580, 734 P.2d at 1263 (summary judgment precluded where showing made that general contractor issued detailed instructions regarding work, fired employees of subcontractors, and assigned employees to tasks other than those for which hired); *Requarth,* 111 N.M. at 55–56, 801 P.2d at 125–26 (summary judgment proper where no showing made that owner had any right of control or reasonably should have known that dangerous condition existed); *see also Hennigan v. Atlantic Ref. Co.,* 282 F.Supp. 667, 676–77 (E.D.Pa.1967) (defendant found to have retained control of work where plans drawn by defendant, method of work decided by defendant, and defendant's inspector required to be at site whenever work was being done), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969); *Hobbs v. Mobil Oil Corp.,* 445 P.2d 933, 935–36 (Alaska 1968) (general contractor who, among other things, required daily reports, specified job designations, required compliance with its work rules and regulations, and retained right to terminate employees might have been found to retain enough control to be liable for injury to independent contractor's employees); *Weber v. Northern Illinois Gas Co.,* 10 Ill.App.3d 625, 295 N.E.2d 41, 46,

50–51 (1973) (summary judgment precluded where general contractor could remove any worker it deemed unfit or unskilled, could order unsafe equipment removed, could order unsafe work be stopped, and inspector to be on site whenever contractor worked). When viewed in the light most favorable to support a trial on the merits, the evidence gives rise to a plausible inference that Westinghouse retained enough control over the means and manner of Dravo's work as well as the work site, that Westinghouse had a duty to exercise that control in a reasonable manner as set forth in the Restatement. This precludes summary judgment on this record. *See Blauwkamp,* 114 N.M. at 236, 836 P.2d at 1257.

■ At the hearing on the motion for summary judgment, counsel for Westinghouse referred to *McLaughlin v. Dravo Engineering, Inc.,* No. 13,465 (N.M.Ct.App. Nov. 18, 1991), a case which was decided on our summary calendar. The trial judge asked if the case had been overruled on appeal, and counsel for Westinghouse replied that it had not. To the extent that the parties and the trial court may have relied on our summary disposition in *McLaughlin,* we emphasize that our summary calendar opinions are not precedent. *See* SCRA 1986, 12–405(A) (Repl. 1992); *State v. Gonzales,* 110 N.M. 218, 227, 794 P.2d 361, 370 (Ct.App.1990) (unpublished memorandum opinions not meant to be cited as controlling authority because they are written solely for the benefit of the individual parties), *aff'd,* 111 N.M. 363, 805 P.2d 630 (1991). In addition, we take judicial notice of the documents in that case and point out that our memorandum opinion was based upon an *unopposed* calendar notice which relied on an asserted fact, unchallenged by the opposing party, that there was no evidence that Westinghouse retained any control over the work of the subcontractor. The case before us is significantly different.

*CONCLUSION*

For the reasons stated above, we reverse and remand to the trial court for reinstatement of the complaint.

**IT IS SO ORDERED.**

HARTZ and BLACK, JJ., concur.

HARTZ, Judge.

I join fully in Judge Bosson's opinion for the panel. I write separately only to emphasize the limited nature of what we are deciding.

When we hold that the evidence of record would support a finding that Westinghouse retained sufficient control over Dravo for Restatement Sections 343 and 414 to apply, we are not saying that such a finding would establish Westinghouse's liability for any injury caused by Dravo's negligence. Liability under Sections 343 and 414 is quite different from liability imposed under the doctrine of respondeat superior. Under the doctrine of respondeat superior, if one party (say, the employer) exercises sufficient control over the details of the work of a second party (say, the employee), then the employer is liable for any injury caused by the negligence of the employee in the course of performing that work. In contrast, under the law set forth in Judge Bosson's opinion, liability under Sections 343 and 414 is imposed only to the extent that the injury was caused by the owner's or employer's failure to use reasonable care in exercising control. *See Requarth v. Brophy*, 111 N.M. 51, 54, 801 P.2d 121, 124 (Ct.App.1990) (under Section 343 "Plaintiff must ... show that his injury was proximately caused by the owner's failure to exercise that control in a reasonable manner[.]"); Restatement (Second) of Torts § 414 (1965) (liability for harm "caused by [employer's] failure to exercise his control with reasonable care").

Consequently, to prevail on his claim, Plaintiff will need to establish more than that Westinghouse retained sufficient control over Dravo for Sections 343 and 414 to apply. Plaintiff must additionally establish that Westinghouse failed to exercise its control with reasonable care and that such failure caused his injury. For example, there is sufficient evidence to permit a fact finder to find that Westinghouse exercised control over Dravo's hiring of employees. Yet, we have not addressed on this appeal whether Westinghouse was negligent in exercising that control or whether Plaintiff's injury was in any way caused by negligent hiring practices.

Westinghouse may believe that even if Sections 343 and 414 apply in this case, it is entitled to summary judgment because of Plaintiff's failure to prove that his injury was caused by any lack of reasonable care by Westinghouse in exercising control over Dravo. But in my view (and apparently the view of the other members of this panel) Westinghouse's pleadings in district court in support of its motion for summary judgment did not adequately alert Plaintiff to this possible ground for summary judgment. Rather, the pleadings focused on the existence of control.

Our decision, of course, does not foreclose Westinghouse from moving in the future for summary judgment on grounds not addressed in Judge Bosson's opinion, nor does it foreclose the appropriate fact finder at trial from finding that there was insufficient control of Westinghouse over Dravo for Section 343 or 414 to apply. All we are saying is that on the record before us Westinghouse was not entitled to summary judgment on the theory it pressed in district court.