This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**BOBBY WINDHAM and**
**VICKIE K. WINDHAM,**

     Plaintiff-Appellants,

v.                              **NO. 29,212**

**L.C.I.2., INC., a New Mexico**
**corporation,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Michael E. Vigil, District Judge**

Will Ferguson & Associates
David M. Houliston
Albuquerque, NM

Sanders and Westbrook, PC
Maureen Sanders
Albuquerque, NM

for Appellants

Law Office of Paul S. Grand, P.A.
Paul S. Grand
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**VIGIL, Judge.**

The employee of a roofing subcontractor (Plaintiff) fell through a skylight opening while he was constructing the roof on a new building. Plaintiff sued L.C.I.2, Inc. (Defendant), the general contractor of the building project, alleging negligence in failing to provide Plaintiff with a safe workplace. On the same basis, Plaintiff's wife sought damages, alleging loss of consortium. A demand was filed for a twelve-person jury to decide all issues of fact. Defendant moved for summary judgment on grounds that Defendant did not retain control of the work premises or the manner in which the subcontractor installed the roof. The district court granted Defendant's motion and dismissed the suit with prejudice. We reverse.

**BACKGROUND**

Defendant was the general contractor for the construction of a new swimming pool building (the project) for the Town of Taos. Defendant contracted with Safety Counselling, Inc., (Safety Counselling) to provide safety consultations. Defendant also contracted with Newt & Butch's Roofing & Sheet Metal, Inc., (Subcontractor) to install the roof on the building. Plaintiff was employed by Subcontractor as a roofer and was the foreman for the project.

On the day of the accident, Plaintiff's crew was installing sheets of vinyl membrane over the insulation on the roof. Plaintiff instructed his crew to roll the

2

vinyl sheets over openings in the roof reserved for skylights, and then cut the vinyl around the perimeter of each skylight, making the opening visible. The skylight opening was not visible while the vinyl was covering it.

As Plaintiff's crew was beginning to roll and cut the vinyl on the roof, an employee of Safety Counselling climbed onto the roof and told Plaintiff that the skylight openings needed to be covered up to prevent someone from falling through them. Plaintiff went to get materials to cover the skylight openings, and when he returned to the roof, Plaintiff fell through a skylight opening which had just been covered with vinyl by his crew. Plaintiff fell through the hole as his crew was cutting the vinyl around the skylight opening.

This suit followed. The district court granted Defendant summary judgment on grounds that Defendant did not retain control of the work premises or the manner in which Subcontractor installed the roof. Plaintiff and his wife appeal.

**DISCUSSION**

**Standard of Review**

"Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992); *see* Rule 1-056 NMRA. "We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. In doing so, we view the facts in the light most favorable to

the non-moving party and indulge all reasonable inferences in support of a trial on the merits. *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 12, 135 N.M. 539, 91 P.3d 58. "Even if the basic material facts are undisputed, if equally logical, but conflicting, reasonable inferences can be drawn from these facts, an award of summary judgment is improper." *Marquez v. Gomez*, 116 N.M. 626, 631, 866 P.2d 354, 359 (Ct. App. 1991).

**General Contractor Liability to Employees of Subcontractors**

As a general rule, a general contractor who employs a subcontractor does not owe any duty of care to the subcontractor's employees. *See Tipton v. Texaco, Inc.*, 103 N.M. 689, 694, 712 P.2d 1351, 1356 (1985). However, the general rule is subject to numerous exceptions. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 71, at 510 (5th ed. 1984); *see also* Restatement (Second) of Torts § 409 cmt. b (1965) (stating that the exceptions are so numerous that it can now be said that the general rule is only "general" in the sense that it is applied where no good reason can be found for departing from it). This case concerns one of those exceptions: the duty to provide a safe workplace for a subcontractor's employees.

The parties agree that a general contractor's duty to provide a safe workplace to employees of a subcontractor is well settled and defined by *Fresquez v. Southwestern Industrial Contractors & Riggers, Inc.*, 89 N.M. 525, 554 P.2d 986 (Ct. App. 1976). Specifically, the parties agree that under *Fresquez*, the duty arises where

4

the general contractor retains control over the work premises or control over the manner in which the work of the subcontractor is performed. We also agree. *Fresquez* states, "Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed." *Id.* at 530-31, 554 P.2d at 991-92 (quoting *Wolczak v. Nat'l Elec. Prods. Corp.*, 168 A.2d 412 (N.J. Super. Ct. App. Div. 1961) (internal quotation marks omitted)).

In this case, Defendant owed a duty to Plaintiff to provide a safe work place if (1) Defendant retained control over the job location; or (2) Defendant directed the manner in which Subcontractor was to perform its tasks. Whether either condition exists involves to some degree a function of the kind of control retained or exercised by the general contractor over the work premises or the subcontractor's work. These are fact-based questions which do not lend themselves easily to resolution by

summary judgment. *See Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶ 20, 127 N.M. 521, 984 P.2d 768 (stating that the extent of the duty owed in the factual context of a given case is a question for the jury); *Pollard v. Westinghouse Elec. Corp.*, 119 N.M. 783, 785, 895 P.2d 683, 685 (Ct. App. 1995) (stating the extent of the duty owed by a general contractor to employees of a subcontractor is to some degree a function of control either retained or exercised by the general contractor over the work performed, and this is primarily a fact question which does not lend itself to resolution by summary judgment). It is only "when no [material] facts are in dispute and the undisputed facts lend themselves to only one conclusion, [that] the issue may properly be decided as a matter of law." *Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728. With these principles in mind, we now turn to the pertinent facts in the summary judgment record.

**Factual Issues On Control of the Premises and Control of the Work**

The roof installation process was as follows. When Subcontractor arrived on the job site, the roof consisted of only iron bar joists placed horizontally across the length of the roof. Subcontractor first laid and welded steel bar joists, called bulb tees, perpendicularly to the horizontal bar joists. This process created a checkerboard pattern of equally-sized 4 by 8 foot rectangles. Subcontractor then installed wood panels, called tectum decking, into the 4 by 8 foot rectangles. To install the tectum decking, Subcontractor's workers would start at the bottom of the sloped roof at one

6

end and worked their way up the roof. As they installed the tectum decking, a walking surface was created on the roof, but wood panels were not placed into certain openings reserved for skylights that were larger in size than the 4 by 8 foot dimensions of the wood panels. Once the tectum decking was installed, a solid surface was created for the roof, except that there remained uncovered frames for the skylights. Subcontractor then screwed insulation over the tectum decking panels. The insulation panels also had 4 by 8 foot dimensions. Next, Subcontractor installed vinyl or TPO membrane over the insulation. The vinyl came in 10-foot wide strips that were rolled across the length of the roof. Lastly, Subcontractor was to install a sheet metal exterior to the roof.

In light of this factual setting, a jury could conclude from the following additional facts in the summary judgment record that there were two separate jobs with two separate job sites: installation of the roof and the roof area installed by Subcontractor on the one hand, and installation and management of the skylights and the holes for installation of the skylights on the other hand. Further, the jury could conclude that the holes for installation of the skylights were an area controlled by Defendant. The additional facts in the summary judgment record are the following.

One of Subcontractor's owners, Butch Wilson, stated that the job under the subcontract was only to install the bulb tees, tectum decking, insulation, membrane, and the roofing sheet metal. According to Wilson, Subcontractor's job did not include

7

installing the skylights, and it did not determine where the skylights would be placed—the project architect made that determination. Wilson stated that on roofing projects skylight openings are generally framed in with steel before the roofing process begins. Wilson said that the proper procedure for laying the vinyl would have been to roll it out until a skylight opening was reached and to then cut the vinyl off and continue to roll it on the other side of the opening. The roofers would then fill in the area around the skylight with extra pieces of vinyl.

Wilson said that it was not part of Subcontractor's job to provide guards for the skylight openings, and that Subcontractor would have had to order additional materials besides the roofing materials to create safety rails. In this regard, the subcontract provides that Subcontractor was required to furnish only the materials necessary to install the roof decking and the roof. Wilson also said that Defendant should have ordered guards that could be installed right after the tectum decking was in place and then Subcontractor could proceed with installing the insulation and vinyl after the safety rails were in place. However, he did not know whose responsibility it was to install guardrails to the skylight openings or to similarly prevent the fall hazard by covering the openings with other material.

According to Plaintiff's affidavit, the frames for the skylights were already installed in the framing of the roof when he arrived at the job site, and he did not construct or have any input as to the size, spacing, or configuration of the skylight

8

openings. On the date of the accident, the openings for the skylights had existed for more than thirty days and were larger than the dimensions of the tectum decking used by Subcontractor. Plaintiff said the curbing should have been completed before he began to lay the vinyl, but it was not. According to Plaintiff, someone else was to install glass or plastic on top of the skylight opening and a curb around the skylight. One of Plaintiff's crew employees (Desi Diaz), also asserted that it was not a part of Subcontractor's job to physically install the skylights or the curbs.

From the foregoing facts, a jury could conclude that Defendant retained control over the work premises of the skylight openings. These include that the skylights were already framed before Subcontractor began the roof installation; that the subcontract only required Subcontractor to furnish roofing materials, which did not include materials for guardrails or hole coverings; that Subcontractor was not involved in the planning, placing, or installation of the skylights frames; that Subcontractor's work only involved the area around the perimeter of the skylight openings; and that Subcontractor was not responsible for placing the curbing or glass on the skylight openings. Thus, a jury could conclude that Subcontractor's work premises only included the areas in which it was to install the roofing materials and that Defendant retained control of the skylight openings themselves.

A jury could also conclude from the facts presented that Defendant retained control of the details of installing the roof insofar as the skylights are concerned. That

9

is, a jury could find that Defendant retained control of the entire skylight installation process to the exclusion of Subcontractor. The facts support findings that Subcontractor could not install the roof entirely in its own way because it had to account for how to handle the pre-formed skylight frames in its roofing process; Subcontractor was not involved with planning or installing the skylight frames; Subcontractor was not required to provide materials for installation of the skylights or guardrails; and Subcontractor did not control any details of the skylight installation. A jury could reasonably conclude that Subcontractor did not have any say as to the planning, placing, or installation of the skylights such that it controlled any details of the dangerous work condition.

Defendant argues that it did not retain control of the roof, which constituted the work premises, or of the manner in which Subcontractor installed the roof. Plaintiff counters that the specific instrumentality creating the dangerous condition causing Plaintiff's injuries was not the roof installed by Subcontractor or any piece of equipment supplied by Subcontractor. Instead, Plaintiff argues, the cause was the unprotected skylight opening, which Subcontractor did not design, create, or control. In our view, the facts and inferences could support either assertion. We therefore conclude that Defendant was not entitled to summary judgment.

**CONCLUSION**

The order of the district court is reversed.

10

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**